**2021 IL 126249**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126249)

THOMAS ROBERTS *et al.* v. ALEXANDRIA TRANSPORTATION, INC., *et al.*,
Appellants (Safety International, LLC, Appellee).

*Opinion filed June 17, 2021.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, and Overstreet
concurred in the judgment and opinion.

Justice Carter dissented, with opinion, joined by Justice Michael J. Burke.

**OPINION**

¶ 1      Section 3 of the Joint Tortfeasor Contribution Act (Contribution Act) (740
ILCS 100/3 (West 2018)) provides that "[t]he pro rata share[1] of each tortfeasor

---

[1]Although the term "pro rata share" can refer to equal shares, many contribution statutes,
including the Contribution Act, provide for relative-fault shares and retain the term "pro rata shares"

shall be determined in accordance with his relative culpability" and that "no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share." However, section 3 contains an exception where "the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability." *Id.*

¶ 2 The United States Court of Appeals for the Seventh Circuit certified a question of law to this court (see Ill. S. Ct. R. 20 (eff. Aug. 1, 1992)). *Roberts v. Alexandria Transportation, Inc.*, 968 F.3d 794, 801 (7th Cir. 2020). The court of appeals asks "whether the obligation of a settling party is uncollectable pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/3 [(West 2018)]." We answer the certified question in the negative, holding that the obligation of a tortfeasor who settles is not "uncollectable" within the meaning of section 3 of the Contribution Act.

¶ 3 I. BACKGROUND

¶ 4 In September 2013, Thomas Roberts was driving a truck westbound through a construction zone on Interstate 70 in Madison County, Illinois, when he saw a flagger holding a sign that said "SLOW." Roberts slowed down. The flagger suddenly turned the traffic sign from "SLOW" to "STOP." Roberts abruptly slammed on his brakes.

¶ 5 Alexandre Solomakha had been driving a tractor-trailer behind Roberts for about two miles before the stop. The distance between the two vehicles was about 1½ tractor-trailers. When Solomakha saw Roberts slow down, Solomakha slowed down too. But when Roberts slammed on his brakes, Solomakha was not able to stop his tractor-trailer in time. Solomakha's tractor-trailer rear-ended Roberts's truck. Roberts's injuries resulted in medical bills totaling more than $500,000.

¶ 6 In October 2014, plaintiffs, Thomas and his wife, Diane Roberts, filed a complaint for negligence under Illinois law in the United States District Court for the Southern District of Illinois, which sat in diversity jurisdiction. Plaintiffs named

---

to describe the apportionment. See 3 Fowler V. Harper *et al.*, The Law of Torts § 10.2, at 51 n.31, 52 n.32 (2d ed. 1986).

as defendants Solomakha, Alexandria Transportation, Inc., and Alex Express, LLC (hereinafter Alex Parties).

¶ 7    In October 2015, the Alex Parties filed a third-party complaint for contribution against several third-party defendants for their role in failing to maintain the safety of the construction site. The Alex Parties filed their contribution claim against Edwards-Kamalduski, LLC (E-K), the general contractor for the road construction project, and Safety International, LLC (Safety), the subcontractor E-K retained through an oral contract to manage (some disputed aspect of) the construction site's worker safety program. The Alex Parties alleged that, if they are liable to plaintiffs in negligence for the crash, then the third-party defendants are also liable as joint tortfeasors because they failed in their duty to keep the construction site safe for travel by the general public.

¶ 8    In February 2017, plaintiffs settled with E-K for $50,000. Plaintiffs and E-K filed a joint motion for a finding of good faith pursuant to the Contribution Act. See 740 ILCS 100/2(c), (d) (West 2016). The Alex Parties objected, arguing that E-K's settlement did not reflect its relative fault. The Alex Parties pointed out that plaintiffs claimed damages including approximately $500,000 in medical bills, $500,000 in future medical treatment, and lifetime lost wages, the total of which exceeded $1 million, without including past pain and suffering. The Alex Parties observed that plaintiffs' last demand was $2 million and that the E-K settlement amount of $50,000 constituted less than 3% of plaintiffs' demand. In May 2017, the district court granted the joint motion of plaintiffs and E-K for a finding of good faith and dismissed E-K from the Alex Parties' third-party contribution action with prejudice.

¶ 9    In late 2017, the Alex Parties settled with plaintiffs for $1.85 million. That settlement released claims against Safety, as well. By its settlement, the Alex Parties paid to plaintiffs the collective tort liability of themselves and of Safety. Therefore, the only remaining claim in the district's court's litigation was the Alex Parties' third-party contribution claim against Safety.

¶ 10    Prior to a jury trial on the Alex Parties' contribution claim, Safety asked the district court to put all of the settling parties, including plaintiffs, on the verdict form. In May 2018, the district court, as a matter of Illinois law, denied Safety's request as to plaintiffs. However, the district court determined that the Alex Parties,

Safety, and E-K must appear on the verdict form so that the jury could adequately apportion fault among every tortfeasor, even though the court had dismissed E-K from the contribution action.

¶ 11     Giving rise to the certified question before us, in January 2019, the district court determined, based on its interpretation of the Contribution Act, that any share of liability that the jury would assign to E-K should not be reallocated between the Alex Parties and Safety on a *pro rata* basis. Therefore, the district court ordered that Safety would pay to the Alex Parties only what the jury determined was Safety's portion of fault and that the Alex Parties would remain liable for E-K's entire share along with its own.

¶ 12     In March 2019, after the conclusion of the trial, the jury determined the respective percentage of fault for each tortfeasor as follows:

15%     Alex Parties

10%     Safety

75%     E-K.

Consequently, Safety was obligated to contribute 10% of the accident liability, leaving the Alex Parties liable for their share of liability for the accident plus E-K's, which totaled 90% of the accident liability.

¶ 13     In terms of dollars, the $50,000 settlement payment by E-K and the $1.85 million settlement payment by the Alex Parties established the total common liability of $1.9 million owed to plaintiffs. See *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 286-87 (1994) (explaining that common liability means the good-faith amount stated in the settlement agreement). Judgment was entered in favor of the Alex Parties and against Safety for $190,000, which represented Safety's 10% *pro rata* share of the common liability.

¶ 14     The district court denied the Alex Parties' posttrial motion to alter or amend the judgment, which asked the court to revisit its determination of the reallocation

- 4 -

issue. The Alex Parties appealed, contesting the district court's resolution of the reallocation issue. *Roberts*, 968 F.3d 794.[2]

¶ 15     The court of appeals began its analysis by citing section 2(b) of the Contribution Act, which provides that "[n]o tortfeasor is liable to make contribution beyond his own pro rata share of the common liability" (740 ILCS 100/2(b) (West 2018)). *Roberts*, 968 F.3d at 800. The court then observed that section 3 of the Contribution Act provides that "[t]he pro rata share of each tortfeasor shall be determined in accordance with his relative culpability" (740 ILCS 100/3 (West 2018)). *Roberts*, 968 F.3d at 800. The court then cited section 3's exception where "the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability" (740 ILCS 100/3 (West 2018)). *Roberts*, 968 F.3d at 800.

¶ 16     In this case, the district court ruled that E-K's obligation was not "uncollectable" and, therefore, did not reallocate E-K's share of liability between the Alex Parties and Safety. Thus, the court of appeals viewed the meaning of an "uncollectable" obligation as the "key question" from the Alex Parties' appeal. *Id.*

¶ 17     The Alex Parties argued that section 2(d) of the Contribution Act, which provides that a tortfeasor who settles with a plaintiff in good faith "is discharged from all liability for any contribution to any other tortfeasor" (740 ILCS 100/2(d) (West 2018)), renders a settling defendant's obligation, such as E-K's, "uncollectable" in any future contribution action. The court of appeals could not accept this argument, reasoning as follows: " 'Discharged,' however, does not necessarily mean 'uncollectable.' We are unable to find, at least, any instance where an Illinois court has said it does." *Roberts*, 968 F.3d at 800.

¶ 18     The court of appeals concluded as follows:

---

[2]Also, Safety cross-appealed, arguing that the district court erred in determining it owed a duty to plaintiffs. The court of appeals held that the Alex Parties presented sufficient evidence at trial to show that the oral contract between Safety and E-K created a duty that Safety owed to plaintiffs to ensure the safety of the construction site. *Roberts*, 968 F.3d at 798-800. This part of the court of appeals decision is not pertinent to the certified question.

"In this case, the question of whether the obligation of a settling party is uncollectable will determine whether the Alex Parties may recover more than Safety's pro rata share to account for E-K's liability, and thus will control the outcome of this appeal. We can find no Illinois cases resolving this issue. We therefore respectfully ask the Illinois Supreme Court to answer the question of whether the obligation of a settling party is uncollectable pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/3 [(West 2018)]." *Id.* at 801.

¶ 19     The court of appeals certified this question of law pursuant to Illinois Supreme Court Rule 20 (eff. Aug. 1, 1992). We agreed to answer the certified question.

¶ 20                              II. ANALYSIS

¶ 21                         A. Narrow Issue Presented

¶ 22     The narrow scope of the certified question is demonstrated by what it does *not* address. First, the original plaintiffs have no interest in this claim. Their rights and interests were extinguished by the terms of their agreement with the Alex Parties. See *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 346 Ill. App. 3d 300, 305 (2004). Rather, this is a third-party contribution claim brought by the Alex Parties against Safety and E-K. The Contribution Act "serves to sort out the relative rights of multiple defendants after the plaintiff has collected from among those defendants who are each fully responsible for all of the damages." *Id.* at 306.

¶ 23     Second, there is no contention that E-K's settlement with plaintiffs was not in good faith. Third, neither Safety nor the Alex Parties dispute that, although E-K settled, E-K was properly on the verdict sheet for accurate apportionment of total fault among all tortfeasors. See *Barnai v. Wal-Mart Stores, Inc.*, 2017 IL App (1st) 171940, ¶ 17 (citing *Truszewski v. Outboard Motor Marine Corp.*, 292 Ill. App. 3d 558, 565 (1997)).

¶ 24     However, before this court, the Alex Parties and Safety maintain their disagreement on the correct allocation of their respective *pro rata* shares of the common liability. The Alex Parties contend that a tortfeasor who settles with a plaintiff in good faith "is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d) (West 2018). The Alex Parties reason that this

- 6 -

language makes the obligation of a settling tortfeasor, such as E-K, "uncollectable" in any future contribution action. Therefore, according to the Alex Parties, section 3 of the Contribution Act requires that the 75% share of liability that the jury assigned to E-K be reallocated between the Alex Parties and Safety on a *pro rata* basis.

¶ 25    In opposition, Safety contends that a good-faith settlement with a plaintiff does not render the settling party's obligation "uncollectable" within the meaning of section 3. Therefore, the Contribution Act protects Safety from contributing more than its *pro rata* share of the common liability, and E-K's 75% share must not be reallocated between the Alex Parties and Safety.

¶ 26    Thus, the "key question" presented to the court of appeals (*Roberts*, 968 F.3d at 800), which that court certified to us, is whether the obligation of a settling party is "uncollectable" pursuant to section 3 of the Contribution Act (*id.* at 801).

¶ 27                              B. Principles of Statutory Construction

¶ 28    The certified question requires us to construe several interrelated sections of the Contribution Act. Statutory construction presents a pure question of law that we review *de novo*. *United States v. Glispie*, 2020 IL 125483, ¶ 9; *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 506-07 (2003). We conduct this inquiry within a familiar analytical framework.

¶ 29    The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. *Glispie*, 2020 IL 125483, ¶ 9. All other rules of statutory construction are subordinate to this cardinal principle. *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15; *Carver*, 203 Ill. 2d at 507. The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. *Glispie*, 2020 IL 125483, ¶ 9. A statute is viewed as a whole. *Id.* ¶ 10. Therefore, words and phrases are construed in light of other relevant statutory provisions and not in isolation. *Chicago Teachers Union*, 2012 IL 112566, ¶ 15; *Carver*, 203 Ill. 2d at 507-08. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. *Chicago Teachers Union*, 2012 IL 112566, ¶ 15. A court may also consider the reason for

the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Glispie*, 2020 IL 125483, ¶ 10; *Chicago Teachers Union*, 2012 IL 112566, ¶ 15. The court presumes that the General Assembly, in enacting legislation, did not intend absurdity, inconvenience, or injustice. *Carver*, 203 Ill. 2d at 508.

¶ 30                                C. Statutory Overview

¶ 31        We begin by considering the nature and purpose of the Contribution Act as a guide to the intent of the legislature in adopting particular language or provisions. See *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 19.

¶ 32        Illinois adheres to the rule of joint and several liability. In general, the common-law doctrine of joint and several liability provides that when two or more individuals tortiously contribute to the same indivisible injury, each individual may be held jointly and severally liable for the entire injury. *Woods v. Cole*, 181 Ill. 2d 512, 518 (1998). Although the legislature has elsewhere placed limitations on the common-law rule (see, *e.g.*, 735 ILCS 5/2-1117 (West 2018) (modifying joint and several liability)), section 4 of the Contribution Act expressly provides: "Rights of Plaintiff Unaffected. *** [A] plaintiff's right to recover the full amount of his judgment from any one or more defendants subject to liability in tort for the same injury to person or property, or for wrongful death, is not affected by the provisions of this Act." 740 ILCS 100/4 (West 2018).

¶ 33        Further, prior to 1977, Illinois courts followed the common-law rule prohibiting contribution among joint tortfeasors. *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill. 2d 1, 8-10 (1977) (collecting cases). The doctrine of joint and several liability allows a plaintiff to join all tortfeasors in a single action and execute the full amount of judgment against any one or more of the joint tortfeasors. The tortfeasor against whom a judgment was executed had no legal right to seek contribution from other joint tortfeasors. This common-law rule was predicated on the presumption that a wrongdoer had no right to seek judicial relief from his own wrongdoing. *Id.* The "no-contribution" rule resulted in harsh consequences to defendants. Because the doctrine of joint and several liability allowed the plaintiff to recover fully against any responsible party, the no-contribution rule permitted

the entire burden of a loss, for which two defendants were equally responsible, to be shouldered by one defendant alone while the other goes completely free. *In re Guardianship of Babb*, 162 Ill. 2d 153, 167-68 (1994).

¶ 34 In our 1977 decision in *Skinner*, this court abolished the common-law rule prohibiting contribution among joint tortfeasors. The *Skinner* court created a contribution action in which liability for the plaintiff's injuries was to be apportioned among joint tortfeasors based on their relative percentages of fault. *Skinner*, 70 Ill. 2d at 13-16.

¶ 35 In 1979, the legislature enacted the Contribution Act as a codification of this court's decision in *Skinner*. *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 363 (2005); *Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003).

¶ 36                          D. Plain Statutory Language:
                    Settling Party's Obligation Not "Uncollectable"

¶ 37 The Alex Parties argue that the plain meaning of the statutory term "uncollectable" includes the liability of settling tortfeasors. The Alex Parties note that the word "uncollectible" is defined simply as "not capable of being collected." Webster's Third New International Dictionary 2485 (1993). The Alex Parties reason that, since a settling party is "discharged from all liability for any contribution to any other tortfeasor" (740 ILCS 100/2(d) (West 2018)), the settling party's contribution obligation is legally uncollectable.

¶ 38 Section 2 of the Contribution Act provides in relevant part as follows:

"Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor

is liable to make contribution beyond his own pro rata share of the common liability.

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." *Id.* § 2(a)-(e).

Section 3 provides in relevant part as follows:

"Amount of Contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share *unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability*." (Emphasis added.) *Id.* § 3.

¶ 39    We reject the Alex Parties' argument that section 2(d), which provides that a settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor" (*id.* § 2(d)), renders the obligation of that settling party "uncollectable." To provide that a settling tortfeasor is "discharged" means "to free from an obligation that burdens" or "to get rid of (as a debt or duty) by paying or performing." Webster's Third New International Dictionary 644 (1993). Section 2(d) plainly refers to the effect of settlement on the settling tortfeasor and the other joint tortfeasors. In contrast, section 3's exception plainly addresses the separate topic of the nature of a joint tortfeasor's obligation, that is, its collectability. As the

court of appeals succinctly observed: " 'Discharged,' however, does not necessarily mean 'uncollectable.' " *Roberts*, 968 F.3d at 800.

¶ 40    The plain language of section 3 provides that, where "the obligation of one or more of the joint tortfeasors is uncollectable," "the remaining tortfeasors shall share *the unpaid portions* of the uncollectable obligation in accordance with their pro rata liability." (Emphasis added.). 740 ILCS 100/3 (West 2018). The legislature could not have intended to include a settlement as an "uncollectable" obligation because there is no "unpaid portion" of a settlement. Section 2(c) provides that, where a joint tortfeasor settles with a plaintiff, it reduces the recovery on any claim against the other joint tortfeasors to the extent of the amount stated in the settlement agreement or in the amount of the consideration actually paid for the settlement, whichever is greater. *Id.* § 2(c). In this case, for example, E-K's settlement payment of $50,000 contributed to the total common liability owed to plaintiffs. Safety accurately argues that E-K's obligation "was not uncollectable—it was collected."

¶ 41    Further, our construction of the Contribution Act accords with the general view that "the obligation of a settling tortfeasor is not uncollectible." See *Gregor v. Clark*, 560 N.W.2d 744, 745 (Minn. Ct. App. 1997). For example, in *Illinois Tool Works, Inc. v. Independent Machine Corp.*, 345 Ill. App. 3d 645, 647 (2003), Illinois Tool Works settled with the underlying plaintiffs and then filed a contribution claim against Independent Machine, the remaining nonsettling defendant-tortfeasor. The court in *Illinois Tool Works* recognized the *Gregor* court's statement of the general rule that the obligation of a settling tortfeasor was not uncollectable. *Id.* at 656. However, Independent Machine asserted that any liability owed in contribution was statutorily capped at the amount of its workers' compensation liability. The appellate court distinguished *Gregor* on the basis that the statutory cap, rather than a party's settlement, rendered Independent Machine's obligation uncollectable. *Id.*

¶ 42    In this case, the plain language of section 3 of the Contribution Act, read in light of the plain language of section 2 and of the entire Act, makes it clear that an "uncollectable" obligation, which requires reallocation of proportionate shares of liability among joint tortfeasors, does not include the obligation of a settling joint tortfeasor. 740 ILCS 100/2, 3 (West 2018).

¶ 43                           E. Legislative History:
                      Settling Party's Obligation Not Uncollectable

¶ 44        However, the Alex Parties argue that the legislative history of the Contribution
       Act confirms its reading of section 3. We disagree. Unless the language of a statute
       is ambiguous, a court should not resort to further aids of construction and must
       apply the statute as written. *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*,
       242 Ill. 2d 231, 237 (2011); *Burrell v. Southern Truss*, 176 Ill. 2d 171, 174 (1997).
       Although the plain language of section 3 makes discussion of its legislative history
       unnecessary, the legislative history does not conflict with our construction.

¶ 45        Senate Bill 308, which eventually would be enacted as the Contribution Act,
       was introduced in March 1979. 81st Ill. Gen. Assem., Senate Bill 308, 1979 Sess.
       Section 3 of the proposed legislation originally provided as follows:

              " '[N]o person shall be required to contribute to one seeking contribution an
              amount greater than his pro rata share unless one or more of the joint tortfeasors
              is or becomes *insolvent* in which event the remaining tortfeasors shall share the
              unpaid portions of the *insolvent's* pro rata share in accordance with their
              pro rata liability." (Emphases added). I Final Legislative Synopsis and Digest
              of the 81st Ill. Gen. Assem. (No. 23), at 236.

       Senate Bill 308 was amended in committee to replace the references to insolvency
       with the references to collectability now found in section 3. *Id.*

¶ 46        The Alex Parties argue that the legislature, in amending section 3 from
       "insolvent" to "uncollectable," intended that the reallocation be applied more
       broadly than to situations where a joint tortfeasor is unable to pay. The Alex Parties
       reason that, since they cannot collect against E-K, then E-K's obligation is
       uncollectable.

¶ 47        We disagree. This court has consistently viewed the statutory references to
       collectability as referring to insolvency or immunity. See, *e.g.*, *Unzicker v. Kraft
       Food Ingredients Corp.*, 203 Ill. 2d 64, 80 (2002). ("Section 3 explains how the
       amount of contribution is determined and what happens when one or more of the
       tortfeasors is *insolvent*" (emphasis added)); *Coney v. J.L.G. Industries, Inc.*, 97 Ill.
       2d 104, 123 (1988) (stating "under the Act, it is the defendant or defendants who

must bear the burden of the *insolvent* or *immune* defendant" (emphases added) (citing Ill. Rev. Stat. 1979, ch. 70, ¶ 303)).

¶ 48    Legislative history, when considered, "is meant to clean up ambiguity, not create it." *Milner v. Department of the Navy*, 562 U.S. 562, 574 (2011). Thus, the legislative history of section 3 of the Contribution Act does not support a broader interpretation of the statute to include the obligation of a settling tortfeasor.

¶ 49    F. Consideration of Joint and Several Liability

¶ 50    We also note the Alex Parties' invitation to consider our statute providing for modified joint and several liability (735 ILCS 5/2-1117 (West 2018)). Section 2-1117 of the Code of Civil Procedure replaces joint and several liability with several liability with respect to nonmedical damages for those found less than 25% responsible for a plaintiff's injuries. *Id.* However, the statute preserves the common-law rule of joint and several liability for medical damages and for all other damages for those found to be 25% or more at fault for a plaintiff's injuries. *Unzicker*, 203 Ill. 2d at 84-85 (explaining 735 ILCS 5/2-1117 (West 1994)). The Alex Parties characterize this provision as similar and related, though not strictly *in pari materia*, to assist us in construing the ambiguity in section 3 of the Contribution Act.

¶ 51    We decline this invitation. We have concluded that section 3 is unambiguous. In the absence of a clear ambiguity, there is no reason to consider the wording of related statutory provisions in construing the statute before us. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983).

¶ 52    G. Public Policy: Equitable Apportionment of Damages

¶ 53    In addition, our holding is consistent with a fundamental policy of the Contribution Act. See, *e.g.*, *Guerino v. Depot Place Partnership*, 191 Ill. 2d 314, 322 (2000) (describing its holding as consistent with underlying policy of Contribution Act).

¶ 54    This court has consistently recognized that the Contribution Act furthers two important public policies: (1) the encouragement of settlements and (2) the

equitable apportionment of damages among tortfeasors. *BHI Corp.*, 214 Ill. 2d at 365; *Johnson*, 203 Ill. 2d at 133. The Act promotes the equitable apportionment of damages mainly by creating the right of contribution among joint tortfeasors when one tortfeasor pays more than his *pro rata* share of the common liability. 740 ILCS 100/2(b) (West 2018); see *BHI Corp.*, 214 Ill. 2d at 365; *In re Guardianship of Babb*, 162 Ill. 2d at 171. The Act promotes settlement by providing that a tortfeasor who enters into a good-faith settlement with the plaintiff is discharged from any contribution liability to a nonsettling tortfeasor. 740 ILCS 100/2(c), (d) (West 2018).

¶ 55     In this case, when the Alex Parties established the total common liability to plaintiffs, they knew in advance what percentage of this contribution E-K had already paid and knew that this was all E-K would ever pay toward the common liability. The Alex Parties also knew that they would be able to recover from Safety only Safety's *pro rata* share of fault and no more. The Alex Parties knew that Safety might be adjudged a small share of the total liability. The Alex Parties' award of $190,000 in damages from Safety vindicates the Contribution Act's public policy of equitably apportioning damages among tortfeasors.

¶ 56     We note that the Alex Parties voluntarily chose to settle with plaintiffs for $1.85 million and that Safety had absolutely no input in the settlement amount, which constituted the bulk of the common liability. Pursuant to the Contribution Act, it would be inequitable to require Safety to pay more than its *pro rata* share under these circumstances.

¶ 57                                    III. CONCLUSION

¶ 58     For the foregoing reasons, we answer the certified question in the negative, holding that the obligation of a tortfeasor who settles is not "uncollectable" within the meaning of section 3 of the Contribution Act.

¶ 59     Certified question answered.

¶ 60     JUSTICE CARTER, dissenting:

¶ 61     The United States Court of Appeals for the Seventh Circuit certified a question of law to this court (Ill. S. Ct. R. 20 (eff Aug. 1, 1992))—"Whether the obligation of a settling party is uncollectable pursuant to the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/3." The majority answers the certified question in the negative, "holding that the obligation of a tortfeasor who settles is not 'uncollectable' within the meaning of section 3 of the Contribution Act." *Supra* ¶ 58. Stated differently, the majority appears to hold that the obligation of a settling tortfeasor *is* collectable in a contribution action.

¶ 62     With respect, I believe the majority has misinterpreted section 3 of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/3 (West 2018)). The majority's holding that a settling tortfeasor's obligation is "not uncollectable" cannot be reconciled with the legislature's decision to provide a settling tortfeasor with absolute legal immunity from contribution claims. Under section 2(d) of the Contribution Act, a settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor." *Id.* § 2(d). In addition to contradicting section 2(d), the majority's decision has the potential to undermine an important legislative goal of the Contribution Act—the encouragement of settlements. See *BHI Corp. v. Litgen Concrete Cutting & Coring Co.*, 214 Ill. 2d 356, 365 (2005) (recognizing the encouragement of settlements as an important public policy of the Contribution Act); *Johnson v. United Airlines*, 203 Ill. 2d 121, 133 (2003) (same). Because I disagree with the majority's answer to the certified question and its construction of the Contribution Act, I respectfully dissent.

¶ 63     The construction of a statute presents a question of law that is reviewed *de novo*. *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 16. Our primary objective when construing a statute is to ascertain and give effect to the legislature's intent, best indicated by the plain and ordinary meaning of the statutory language. *Id.* The reviewing court should consider the statute in its entirety, mindful of its subject and the apparent legislative intent of its enactment. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14. The statutory language must also be considered in light of other relevant provisions and without construing any words or phrases in isolation. *Id.* No part of a statute should be rendered meaningless or superfluous. *Van Dyke v. White*, 2019 IL 121452, ¶ 46.

¶ 64    In relevant part, the certified question in this appeal centers on section 3, which provides:

> "Amount of contribution. The pro rata share of each tortfeasor shall be determined in accordance with his relative culpability. However, no person shall be required to contribute to one seeking contribution an amount greater than his pro rata share *unless the obligation of one or more of the joint tortfeasors is uncollectable. In that event, the remaining tortfeasors shall share the unpaid portions of the uncollectable obligation in accordance with their pro rata liability.*" (Emphasis added.) 740 ILCS 100/3 (West 2018).

Effectively, the emphasized statutory language operates as a narrow exception to the general rule that no tortfeasor is required to pay more than its *pro rata* share of relative culpability. The exception applies only when the obligation of another joint tortfeasor is "uncollectable."

¶ 65    Accordingly, the certified question and the parties' dispute in this case focuses on whether the obligation of a settling tortfeasor—here, E-K—is "uncollectable," thereby triggering the exception in section 3. To answer the question, it is necessary to consider that term in the context of the Contribution Act as a whole. See, *e.g.*, *Rushton*, 2019 IL 124552, ¶ 14 (statutory language must be viewed in light of other relevant provisions and without construing any words or phrases in isolation).

¶ 66    When an obligation is "uncollectable," it is considered "not capable of or suitable for being collected." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/uncollectible (last visited June 1, 2021) [https://perma.cc/R3W7-KG37]. Notably, the Contribution Act addresses the collectability of a settling tortfeasor's obligation for contribution to a joint tortfeasor in very plain terms—section 2(d) provides that a settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor." 740 ILCS 100/2(d) (West 2018).

¶ 67    The legislative intent of section 2(d) is crystal clear—a settling tortfeasor is immune from *any* contribution to *any* other joint tortfeasor with no exceptions. Put simply, section 2(d) provides a settling tortfeasor with absolute immunity from contribution claims. When viewed in context, the legislature's decision comports perfectly with an important legislative goal of the Contribution Act—the

encouragement of settlements. *BHI Corp.*, 214 Ill. 2d at 365; *Johnson*, 203 Ill. 2d at 133. The absolute immunity from contribution claims granted to a settling tortfeasor by section 2(d) is no doubt a powerful incentive to settle in cases, such as here, that involve several tortfeasors with varying degrees of culpability.

¶ 68 Unlike the majority, I would adhere to this clear legislative intent. If a settling tortfeasor is *never* liable for a joint tortfeasor's contribution claim under section 2(d), it necessarily follows that a settling tortfeasor's obligation for contribution to a joint tortfeasor is "uncollectable" for purposes of section 3. As the Alex Parties argue, a settling tortfeasor's liability for a contribution claim is statutorily discharged under section 2(d).

¶ 69 To reiterate—section 2(d)'s immunity from contribution liability for settling tortfeasors is absolute, and section 3 contains no language modifying or eliminating the immunity. As this court has explained, "[n]o rule of construction authorizes us to declare that the legislature did not mean what the plain language of the statute imports, nor may we rewrite a statute to add provisions or limitations the legislature did not include." *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15.

¶ 70 The majority, however, essentially ignores section 2(d) by claiming that collectability under section 3 is a "separate topic" from the immunity provided under section 2(d). *Supra* ¶ 39. The majority reasons that "the legislature could not have intended [section 3] to include a settlement as an 'uncollectable' obligation because there is no 'unpaid portion' of a settlement." *Supra* ¶ 40. More to the point, the majority agrees with Safety's argument that E-K's settlement payment of $50,000 contributed to the total common liability owed to plaintiffs and, therefore, E-K's obligation " 'was not uncollectable—it was collected.' " *Supra* ¶ 40. Quoting *Gregor v. Clark*, 560 N.W.2d 744, 745 (Minn. Ct. App. 1997), the majority states that its construction of section 3 accords with the general view that " 'the obligation of a settling tortfeasor is not uncollectable.' " *Supra* ¶ 41. Respectfully, I believe that the majority is mistaken for several reasons.

¶ 71 First, it is a cardinal rule of statutory construction that this court must construe a statute in its entirety and consider the language in light of other relevant provisions. *Rushton*, 2019 IL 124552, ¶ 14. We are not free to view related provisions in isolation, as the majority does here. The most reasonable construction

of the plain statutory language is that a settling tortfeasor's obligation or liability to other joint tortfeasors is "uncollectable" for purposes of section 3 because the legislature plainly stated that a settling tortfeasor "is discharged from all liability for any contribution to any other tortfeasor" in section 2(d). The majority's decision to view section 2(d) and section 3 in isolation is not proper statutory construction.

¶ 72     Second, the majority's reliance on a general statement about settling tortfeasors from the Minnesota appellate court's decision in *Gregor* is misplaced. *Gregor* analyzed a Minnesota statute and did not reference Illinois's Contribution Act, let alone construe the term "uncollectable" for purposes of section 3 and section 2(d) of the Contribution Act. *Gregor* is simply not instructive on the Illinois-specific statutory issue presented in the certified question.

¶ 73     Third, the majority implies that the term "uncollectable" in section 3 applies only to insolvent tortfeasors. *Supra* ¶ 47. This, too, is untenable. As the Alex Parties observe, the legislature amended section 3 to replace the term "insolvent" with "uncollectable." It would be quite a feat for a reviewing court to construe a statute to mean only a word or term that the legislature deliberately removed, but that is precisely what the majority does here. Unlike the majority, I would not limit section 3 to insolvent tortfeasors when the legislature chose to remove any reference to insolvent tortfeasors in the provision. This court is not permitted to rewrite a statute or ignore its plain language. *Zahn*, 2016 IL 120526, ¶ 15.

¶ 74     Fourth, the majority expresses concern that enforcing the Contribution Act as written would be unfair. Specifically, the majority concludes that requiring Safety to contribute more than its *pro rata* share of fault to the Alex Parties' $1.85 million settlement with the plaintiffs would be "inequitable" because "the Alex Parties voluntarily chose to settle with plaintiffs for $1.85 million and *** Safety had absolutely no input in the settlement amount, which constituted the bulk of the common liability." *Supra* ¶ 56.

¶ 75     I note, however, that evaluating fairness on contribution liability is an inherently subjective endeavor in a complicated case involving several tortfeasors. I also observe that the legislature provided Safety with a way to shield itself from contribution liability to another joint tortfeasor under section 2(d)—settle with the plaintiffs. Safety apparently chose not to settle with plaintiffs, thus assuming the

risk that it may be liable for a joint tortfeasor's contribution claim under the Contribution Act.

¶ 76    Even if the scenario described by the majority is arguably unfair, it is also arguably unfair to deny, or diminish, the Alex Parties' contribution claim against a *nonsettling* joint tortfeasor such as Safety. In fact, one could reasonably argue that Safety, a party who chose not to settle with plaintiffs, unfairly benefits from the Alex Parties' settlement with plaintiffs because that settlement released claims against Safety and the Alex Parties paid plaintiffs the collective tort liability of themselves and Safety. *Supra* ¶ 9.

¶ 77    Nonetheless, I do not believe that this court is the appropriate venue for deciding what is the most equitable or fair outcome for each joint tortfeasor on the admittedly complicated facts of this case. Instead, I would defer to the legislature's decision to provide absolute immunity to settling tortfeasors for contribution claims, thereby furthering the Contribution Act's goal of encouraging settlements. *BHI Corp.*, 214 Ill. 2d at 365; *Johnson*, 203 Ill. 2d at 133. I suspect that the majority's conclusion here, reaching the opposite conclusion, will likely require the General Assembly to revisit the Contribution Act.

¶ 78    In summary, I would answer the certified question in the affirmative and hold that, under section 3, the obligation of a settling tortfeasor is "uncollectable" in a contribution claim because the legislature chose to immunize a settling tortfeasor "from all liability for any contribution to any other tortfeasor" in section 2(d). The related statutory provisions must be viewed together and applied as written. *Policemen's Benevolent Labor Committee v. City of Sparta*, 2020 IL 125508, ¶¶ 14-15. For these reasons, I respectfully dissent.

¶ 79    JUSTICE MICHAEL J. BURKE joins in this dissent.