2021 IL 127206

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 127206)

DAVID WALKER SR. *et al.*, Appellees, v. ROGER AGPAWA, Appellant.

*Opinion filed August 26, 2021.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

## OPINION

¶ 1    The central issue in this case is whether the appellate court erred in holding that Roger Agpawa was not a qualified candidate for mayor of the City of Markham due to a 1999 federal felony mail fraud conviction, even though he obtained a document purporting to restore his citizenship rights from then-Governor Bruce Rauner in 2018.

¶ 2        For the following reasons, we reverse the judgment of the appellate court.

¶ 3                                    BACKGROUND

¶ 4        In 1999, Agpawa pleaded guilty to one count of federal felony mail fraud. According to a postal inspector's memorandum memorializing plea negotiations between Agpawa and an assistant United States Attorney, beginning in 1991 Agpawa engaged in a scheme to defraud an insurance company while he was Markham Fire Department chief. He was sentenced to three years' probation and ordered to perform 200 hours of community service and to pay $60,907 in restitution. In 2002, he completed the terms of his sentence.

¶ 5        Nearly 15 years later, Agpawa filed papers to run for mayor of the City of Markham in the April 4, 2017, consolidated election. There were no preelection challenges to Agpawa's nominating petitions, but his candidacy caught the attention of Cook County State's Attorney Kimberly Foxx. On March 23, 2017, Foxx sent a letter to Agpawa stating that he was ineligible to serve as mayor and, if elected, ineligible to take the oath of office because of his felony conviction. Agpawa won the election.

¶ 6        On April 24, 2017, Foxx filed a *quo warranto* complaint, alleging that Agpawa was ineligible to become mayor of Markham pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2016)). Foxx further alleged that Agpawa had been convicted of an "infamous crime" and, consequently, was prohibited from holding municipal office, unless he received a pardon for his crime, under section 29-15 of the Election Code. 10 ILCS 5/29-15 (West 2018). Foxx noted that Agpawa never received a presidential pardon. In response, Agpawa asserted that his civil rights, including the right to hold municipal office, remained intact under section 5-5-5 of the Uniform Code of Corrections. 730 ILCS 5/5-5-5 (West 2016). He further asserted that section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code together violated the free speech and due process provisions of the United States and Illinois Constitutions (U.S. Const., amends. I, XIV; Ill. Const. 1970, art I, §§ 2, 4).

¶ 7        On August 9, 2017, the trial court granted judgment on the pleadings to Foxx, barring Agpawa from becoming mayor. He appealed. The appellate court affirmed

the trial court's decision. *People ex rel. Foxx v. Agpawa*, 2018 IL App (1st) 171976. Agpawa then sought relief from then-Governor Bruce Rauner. On September 14, 2018, Rauner issued an untitled document on his official letterhead, which read:

"Whereas, ROGER AGPAWA was convicted of the crime of Mail Fraud, Case: 1997 CR 820-2 in the Northern District of Illinois Federal Court and sentenced December 22, 1999 to 36 Months['] Probation and 200 hours community service.

Whereas, it has been represented to me that ROGER AGPAWA is a fit and proper subject for Restoration of Rights of Citizenship.

Now, Know Ye, that I, BRUCE RAUNER, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of the State, do by these presents:

RESTORATION OF RIGHTS OF CITIZENSHIP

ROGER AGPAWA

Of the said crime of which convicted, and ROGER AGPAWA is hereby discharged of and from all further hindrance and restored to all rights of citizenship which may have been forfeited under Illinois law as a result of the federal conviction. All rights under federal law which were forfeited as a result of this conviction are unaffected by this action.

Grant Restoration of Rights, Excluding the Right to Ship, Transport, Possess or Receive Firearms Which Were Forfeited by the Conviction."

See 2021 IL App (1st) 210080, ¶ 46.

¶ 8        The document was filed by the Secretary of State's index department on September 25, 2018. On that date, Agpawa took the oath of office as Markham mayor and filed an emergency motion to vacate the trial court's 2017 judgment. On September 27, an assistant Cook County state's attorney informed Agpawa's attorney that, "based on the Governor's actions, we will have no objection to the emergency motion." The next day, the trial court granted the motion and vacated its earlier order, finding that Agpawa's federal conviction was no longer an impediment to holding municipal office "by virtue of" the Governor's document.

- 3 -

Citing *People ex rel. Symonds v. Gualano*, 124 Ill. App. 2d 208 (1970), as well as article V, section 12, of the 1970 Illinois Constitution (Ill. Const. 1970, art. V, § 12), the trial court maintained, "It is clear that the Governor has complete authority to grant reprieves from the consequences of criminal convictions to the maximum extent of Illinois law, including Illinois-specific consequences of federal convictions." No appeal was taken from that decision.

¶ 9        In 2020, Agpawa filed papers seeking reelection. David Walker, Robert Depolo, and Marina Pangopolous filed an objection to Agpawa's candidacy, claiming that he was not qualified under section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code due to his federal conviction for which he was never pardoned by the president. The objectors and Agpawa filed cross-motions for summary judgment, and the Markham Municipal Officers Electoral Board (Board) granted Agpawa's motion. The Board observed that the objectors' argument raised separation of powers issues between the General Assembly and the governor. The Board concluded that it did not have "the legal authority to pass on any such questions."

¶ 10        Instead, the Board reviewed the governor's pardon powers under both the 1870 Constitution and the 1970 Constitution. The Board discussed *Gualano*, which involved a similar restoration of rights by the governor, and characterized the holding in that case as "definitive" and "clearly dispositive." According to the Board, Illinois caselaw "supports the Governor's unlimited power to restore a citizen's civil rights when those rights are lost as a collateral consequence of Illinois law." The Board concluded that the trial court's September 28, 2018, order

> "removed the previous disqualification, permitting [Agpawa] to take his oath of office, assume his duties, and continue to serve to this date. That judicial determination—affecting this person's ability to seek and hold this office—is binding upon the Electoral Board. Since the 2018 Circuit Court order, neither the State's Attorney, the Attorney General, nor any private voter or taxpayer has attempted to or otherwise sought to challenge the Candidate's eligibility to hold office through a renewed Quo Warranto action or otherwise. *** Furthermore, it would be a legal absurdity if an officeholder and candidate were forced to re-litigate this same issue every election cycle.

The action of the Governor of the State of Illinois, and the order of the Circuit Court of Cook County, end this Electoral Board's inquiry."

¶ 11 The objectors sought judicial review, and the trial court confirmed the Board's decision. The objectors appealed, and a divided panel of the appellate court reversed the Board's decision. 2021 IL App (1st) 210080. The appellate court majority recognized the breadth of the Governor's pardon power but added that this court has never "determined that the Governor may use the pardon power to affect a federal offense, including the collateral consequences that result from a federal conviction." *Id.* ¶ 17. And while the Constitution grants the pardon power, there is "no constitutional provision that expressly grants the Governor the authority to issue a Governor's certificate to restore rights." *Id.* ¶ 21. In fact, the majority observed that the Governor's document in this case "appears to be modeled on the certificates that were upheld in *Gualano* and a modified clemency order." *Id.* ¶ 22. The majority then considered that case and disagreed with it:

> "We do not believe that the *Gualano* court's reasoning is consistent with the current constitutional and legislative landscape in Illinois. The Illinois Constitution of 1970 specifically grants the Governor the authority to issue 'reprieves, commutations, and pardons,' but nothing in the text or structure of the Illinois Constitution suggests that the Governor has the authority to pardon offenses against the United States or against other states. Nor does the Illinois Constitution contemplate a separate grant of gubernatorial power for the restoration of rights lost due to a qualifying conviction from a sovereign jurisdiction." *Id.* ¶ 26.

¶ 12 The appellate court majority compared section 3.1-10-5(b) of the Municipal Code with section 29-15 of the Election Code. While the legislature added a clause for restoring eligibility to hold elected office via a pardon or " 'otherwise according to law' " in the latter statute (*id.* ¶ 29 (quoting 10 ILCS 5/29-15 (West 2018))), the former statute contains no such provision (*id.* ¶ 28). The majority added that, even if those two provisions must be read together, only a pardon for the disqualifying offense would restore eligibility "because our legislature has not enacted any statutory mechanism that would give effect to the language 'otherwise according to law' in section 29-15 of the Election Code." *Id.* ¶ 30. Here, "the parties do not contend *** that then-Governor Rauner had the authority to pardon Agpawa for his

federal conviction, and there is nothing that indicates that was the then-Governor's intention" in issuing the untitled document. *Id.* ¶ 34.

¶ 13   Presiding Justice Walker dissented, asserting that the document did not alter Agpawa's federal conviction but did remove consequences flowing from it under Illinois law. *Id.* ¶ 42 (Walker, P.J., dissenting). One of those consequences was the ineligibility to hold public office. *Id.* ¶ 44.

¶ 14   The appellate court's decision was filed on April 22, 2021. Later that day, the objectors filed an emergency motion to suppress votes for Agpawa before the Cook County Clerk (Clerk) certified the election results. The appellate court denied that motion on April 26, and the Clerk certified the results on April 27. On April 30, Agpawa filed a petition for leave to appeal and a motion to expedite our consideration of it. Before we decided that motion, the objectors filed an emergency motion for supervisory order, asking us to direct the appellate court to vacate its order denying their emergency motion to suppress votes, to direct the Clerk to rescind her certification of the election results and suppress any votes for Agpawa, and to void the election and declare a new one. We granted Agpawa's motion to expedite and allowed his petition. We took the objectors' motion with the case.

¶ 15   On May 31, 2021, the Illinois House and Senate passed Senate Bill 825, which, *inter alia*, amended both section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code. On June 17, 2021, Governor Pritzker signed the bill, and it became Public Act 102-15. See Pub. Act 102-15 (eff. June 17, 2021) (amending, *inter alia*, 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b)). On June 21, 2021, we ordered the parties to file supplemental briefs about the effect of the statutory amendment on the issues in this appeal. The parties have now done so, and we proceed to the merits.

¶ 16                                    ANALYSIS

¶ 17   An objector "aggrieved by the decision of an electoral board may secure judicial review of such decision." 10 ILCS 5/10-10.1 (West 2018). Because an electoral board is an administrative agency, that review is more accurately described as administrative review. *Corbin v. Schroeder*, 2021 IL 127052, ¶ 31. A subsequent appeal of the trial court's decision still involves the propriety of the underlying

- 6 -

electoral board decision. *Id.* That is, "where a circuit court reviews an electoral board's decision pursuant to section 10-10.1 of the Election Code, we review the decision of the board, not the court." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). On a purely legal issue, like the one in this case, our review proceeds *de novo. Corbin*, 2021 IL 127052, ¶ 33.

¶ 18        Under article XIII, section 1, of the 1970 Illinois Constitution, "[a] person convicted of a felony, bribery, perjury or other infamous crime shall be ineligible to hold an office created by this Constitution," though "[e]ligibility may be restored as provided by law." Ill. Const. 1970, art. XIII, § 1. Such a law is section 5-5-5(b) of the Unified Code of Corrections, which states, "A person convicted of a felony shall be ineligible to hold an office created by the Constitution of this State until the completion of his sentence." 730 ILCS 5/5-5-5(b) (West 2018).

¶ 19        Municipal offices, however, are not created by the Illinois Constitution but by statutes. And the qualifications to hold such offices are created by statutes, as well. See generally *People v. Hofer*, 363 Ill. App. 3d 719, 723 (2006) (stating that the Illinois Constitution grants the legislature authority "to create units of local government" and "to specify the qualifications required to hold" municipal office). One of those statutes parallels the constitutional provision regarding convicted felons. Like article XIII, section 1, of the 1970 Constitution, section 3.1-10-5(b) of the Municipal Code provides that a person convicted of a felony, bribery, perjury, or any infamous crime is ineligible to hold a municipal office. 65 ILCS 5/3.1-10-5(b) (West 2018). Unlike that constitutional provision, section 3.1-10-5(b) did not state that eligibility could be restored. Section 29-15 of the Election Code did. That statute provided that a person convicted of an infamous crime was prohibited from holding municipal office "unless such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law." 10 ILCS 5/29-15 (West 2018).

¶ 20        In April, the appellate court majority observed, "[t]he legislature could enact a statutory provision that restores eligibility to seek and hold public office to a person convicted of an infamous crime generally, or of mail fraud specifically, 'according to law' through a legislative enactment, but it has not." 2021 IL App (1st) 210080, ¶ 32. Stated differently, the appellate court majority saw a hole in Illinois election law—an absence of any statutory path to restore eligibility for municipal office

after an infamous crime conviction—that robbed Governor Rauner's untitled document of any efficacy, so that Agpawa was still ineligible to be Markham mayor. In May, the legislature responded and amended both section 29-15 of the Election Code and section 3.1-10-5(b) of the Municipal Code. And in June, Governor Pritzker signed that bill, which became Public Act 102-15.

¶ 21          Section 29-15 of the Election Code now states:

"Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law. Any time after a judgment of conviction is rendered, a person convicted of an infamous crime may petition the Governor for a restoration of rights.

The changes made to this Section by this amendatory Act of the 102nd General Assembly are declarative of existing law." Pub. Act 102-15 (eff. June 17, 2021) (amending 10 ILCS 5/29-15).

¶ 22          Section 3.1-10-5(b) of the Municipal Code now states:

"A person is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony, unless such person is again restored to his or her rights of citizenship that may have been forfeited under Illinois law as a result of a conviction, which includes eligibility to hold elected municipal office, by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law. Any time after a judgment of conviction is rendered, a person convicted of an infamous crime, bribery, perjury, or other felony may petition the Governor for a restoration of rights.

The changes made to this subsection by this amendatory Act of the 102nd General Assembly are declarative of existing law and apply to all persons

elected at the April 4, 2017 consolidated election and to persons elected or appointed thereafter." Pub. Act 102-15 (eff. June 17, 2021) (amending 65 ILCS 5/3.1-10-5(b)).

¶ 23     What did the amendment do? That is a question of statutory interpretation. The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent. *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249, ¶ 29. And the best indicator of that intent is the language used, given its plain and ordinary meaning. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 52.

¶ 24     The plain language of amended section 29-15 of the Election Code and amended section 3-10-5(b) of the Municipal Code provides that a person convicted of an infamous crime loses eligibility to assume municipal office but may regain eligibility by a restoration of rights from the governor. While the governor has no constitutional authority to pardon a federal conviction, the governor has statutory authority to mitigate the collateral electoral consequences of such a conviction by issuing a restoration of rights. The legislature did not fill the proverbial hole identified by the appellate court majority; it clarified that a hole never existed. We hold that Governor Rauner's untitled document restored all of Agpawa's Illinois rights of citizenship, including the right to hold municipal office, and he was eligible to be mayor of Markham.[1]

¶ 25     The objectors make seven points in their supplemental brief: (1) the Illinois legislature has no authority to alter the effect of a federal conviction, (2) the statutory amendment violates the special legislation clause, (3) the statutory amendment is "void for vagueness," (4) the statutory amendment should not be applied retroactively to benefit Agpawa, (5) the statutory amendment violates their

---

[1]That holding is consistent with *Bryant v. Board of Election Commissioners*, 224 Ill. 2d 473 (2007). There, we concluded that, under the former statutory scheme, a former Chicago alderman was ineligible to hold elected municipal office because he had not received a pardon for his federal law conviction "nor otherwise had his right to hold office restored." *Id.* at 475; see also *Alvarez v. Williams*, 2014 IL App (1st) 133443, ¶ 10 ("When read in their entirety, the provisions of the Election Code and the School Code at issue establish an intent by the legislature to prevent individuals convicted of infamous crimes from holding offices of honor, trust and profit without an official pardon or restoration of rights."). We envisioned that the governor's authority to issue a restoration of rights was distinct from the governor's authority to issue a pardon.

first amendment rights to object to Agpawa's candidacy, (6) the statutory amendment violates the equal protection clause, and (7) the statutory amendment violates separation of powers principles.

¶ 26 The objectors' arguments are easy to reject. Regarding their first point, the objectors confuse the fact of a federal conviction, which neither the General Assembly nor the governor may alter, with the state-law electoral effects of such a conviction, which they may. See *Gualano*, 124 Ill. App. 2d at 215 (stating "the Restoration of Rights does not affect [the defendant's] Federal conviction, but only the consequences" that flow from that conviction (relying upon *Arnett v. Stumbo*, 153 S.W.2d 889 (Ky. Ct. App. 1941))); see also *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 476 (2004) ("The Governor's pardon power allows him to remove or mitigate the consequences of a crime ***.").

¶ 27 Regarding their second point, the objectors state:

"The Amendment has the hallmarks of special legislation, including references to the 2017 election and specifically identifies candidates with felony convictions who received a 'restoration of rights' as being eligible for municipal elected office. There is only one such person who benefits from this legislation."

The objectors then quote an extended passage from our opinion in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), before summarily concluding "[t]he Amendment is nothing short of special legislation that was written to benefit Agpawa."

¶ 28 Lengthy quotes without application are an inadequate substitute for disciplined legal analysis. The objectors ignore the familiar twofold test for special legislation challenges under which a reviewing court must initially determine whether the classification created by the statute discriminates in favor of a certain person or group and then determine whether the classification was arbitrary. See *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 23. Their shallow discussion poses an impediment to the court addressing and deciding the issue under principles of party presentation. See *People v. Givens*, 237 Ill. 2d 311, 323-24 (2010) ("[A]s a general rule, [o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for

- 10 -

advancing the facts and arguments entitling them to relief." (Internal quotation marks omitted.)).

¶ 29 Regarding their third point, the objectors attempt without explanation to transplant the void-for-vagueness doctrine, which generally applies only to criminal statutes (see *City of Chicago v. Morales*, 177 Ill. 2d 440, 448-49 (1997)), to the context of this case. We reject that attempt. The governor's clemency power is extremely broad (see *Snyder*, 208 Ill. 2d at 473) and "controlled only by his conscience and his sense of public duty" (*People ex rel. Smith v. Jenkins*, 325 Ill. 372, 374 (1927)). The lack of any procedure for requesting a restoration of rights, the grant of which lies fully within the governor's discretion, is constitutionally unproblematic.

¶ 30 Regarding their fourth point, the objectors fail to recognize that the statutory amendment is a declaration of existing law, so it need not be given retroactive effect. As Agpawa asserts in his supplemental brief, the legislature had long acquiesced in the appellate court's decision in *Gualano* that the governor could remove the incidental state-law consequences of a federal conviction via a restoration of rights. The legislature acted quickly to correct the appellate court's contrary decision here.

¶ 31 Regarding their fifth point, the objectors offer three lengthy quotes, none of which mention the first amendment. Further, the statutory amendment does not affect their rights to object to Agpawa's candidacy; it simply removes one reason to object to it. Regarding their sixth point, the objectors offer another lengthy quote, and no substance, as to why the statutory amendment violates equal protection. They do not discuss the degree of scrutiny or the rational-basis test.

¶ 32 Regarding their seventh point, the objectors contend without any support that separation of powers principles require a judicial role in the governor's decision to grant restoration of rights requests and that "[d]ue process demands no less than transparent and public applications" for such requests. Without parsing apart which constitutional provision forms the basis for this argument, we reject it for the same reasons that we rejected the objectors' void-for-vagueness argument.

¶ 33 The introduction to the objectors' brief reveals their overall perspective. In short, the objectors insist that the optics are ugly. According to the objectors, Senate

Bill 825 was "rushed to passage" and "hastily enacted" late in the legislative session as a result of "lobbying efforts" on behalf of Agpawa. We should not be shocked that lobbying influences the legislative process. See *Mercy Crystal Lake Hospital & Medical Center v. Illinois Health Facilities & Service Review Board*, 2016 IL App (3d) 130947, ¶ 34. Any concerns about that should be directed at the political branches and not the judiciary.

¶ 34 Finally, our holding renders the issues raised in the objectors' emergency motion for supervisory order irrelevant. Therefore, we deny that motion.

¶ 35 CONCLUSION

¶ 36 For the reasons that we have stated, we reverse the judgment of the appellate court, which reversed the decision of the Board, and we deny the objectors' emergency motion for supervisory order.

¶ 37 Appellate court judgment reversed.

¶ 38 Board decision affirmed.