# Illinois Official Reports

## Appellate Court

---

### *Ervin v. Alsberry*, 2017 IL App (1st) 170398

---

| | |
|---|---|
| Appellate Court Caption | NKYIA ERVIN, Petitioner-Appellant, v. VERNARD L. ALSBERRY, JR., Candidate for Village President and in His Official Capacity as Chairman of the Municipal Officers Electoral Board for the Village of Hazel Crest; ISAAC R. WISEMAN, Candidate for Village Clerk; KEVIN MOORE, SR., Candidate for Village Trustee and in His Official Capacity as Chairman of the Municipal Officers Electoral Board for the Village of Hazel Crest; MARLON D. RIAS, Candidate for Village Trustee and in His Official Capacity as Member of the Municipal Officers Electoral Board for the Village of Hazel Crest; JAVA ROGERS, Candidate for Village Trustee; ROBERICK S. BASHIR, Candidate for Village President; JACQUELINE B. OWENS, Candidate for Village Clerk; DEIDRE M. DYER, Candidate for Village Trustee; LEE FANTROY, Candidate for Village Trustee; PATRICIA JACKSON, Candidate for Village Trustee; THE MUNICIPAL OFFICERS ELECTORAL BOARD FOR THE VILLAGE OF HAZEL CREST; THOMAS A. JACONETTY, in His Official Capacity as Chairman of the Municipal Officers Electoral Board for the Village of Hazel Crest; SUSAN PATE, JUNE BROWN, and JASON GUISINGER, in Their Official Capacities as Members of the Municipal Officers Electoral Board for the Village of Hazel Crest, Respondents-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-17-0398 |
| Filed | March 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-COEL-15; the Hon. Margarita T. Kulys, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|

| Counsel on Appeal | McStephen A.O. Solomon, of Hazel Crest, for appellant. |
|---|---|
| | Odelson & Sterk, Ltd. (Burton S. Odelson and Mary Ryan Norwell, of counsel), and Rosenthan, Murphey, Coblentz & Donahue, (Judith K. Kolman, of counsel), both of Chicago, for appellee Municipal Officers Electoral Board for the Village of Hazel Crest. |

| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Mason concurred in the judgment and opinion. |
|---|---|

## OPINION

¶ 1 Nkyia Ervin filed a petition in the circuit court seeking judicial review of multiple electoral board decisions overruling her objections to the nomination petitions by various candidates in the upcoming consolidated election. The circuit court dismissed the petition, and Ervin appeals. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3 Nkyia Ervin objected to two nominating petitions for 10 candidates seeking election to various positions in the Village of Hazel Crest (the Village) by filing 10 separate objection petitions, 1 for each of the 10 candidates. Five of those candidates filed a single joint nomination petition as a slate of candidates for the Hazel Crest United Party. Those candidates are Vernard Alsberry, Jr., the current Village president seeking reelection; Marlon Rias, candidate for Village trustee; Kevin Moore, Sr., current Village trustee seeking reelection; Isaac Wiseman, candidate for Village clerk; and Java Rogers, candidate for Village trustee. Five other candidates filed a single joint nomination petition as a slate of candidates for the Hazel Crest New Leadership Party. Those candidates are Roderick Bashir, candidate for Village president; Patricia Jackson, candidate for Village trustee; Lee Fantroy, candidate for Village trustee; Deidre Dyer, candidate for Village trustee; and Jacqueline Owens, candidate for Village clerk.

¶ 4 Pursuant to section 10-9(3) of the Election Code (10 ILCS 5/10-9(3) (West 2014)), the Village was obligated to constitute an electoral board composed of the Village president, the clerk, and one member of the board of trustees eligible to serve on the electoral board who had served the greatest number of years as a trustee. Four separate boards were constituted, but the Village attorney recognized that there were conflicts between the composed boards and the various candidates. Pursuant to section 10-9 of the Election Code, the Village attorney requested that the chief judge of the circuit court of Cook County appoint three members of the

public to hear three of Ervin's objections. The Village attorney separately requested that the circuit court appoint two members of the public to hear five other objections raised by Ervin and another objector. The circuit court entered orders appointing members of the public to serve on the electoral boards as requested.

¶ 5     The first electoral board was composed of Alsberry, Rias, and Susan Pate, the most senior trustee (first electoral board), and was constituted to hear Ervin's objections to the nomination petitions filed on behalf of Wiseman (case No. 17-EB-1) and Owens (case No. 17-EB-2). Ervin objected to both candidates on the grounds that they were indebted to the Village at the time the nomination petitions were filed, and that the arrearages disqualified Wiseman and Owens. Specifically, Ervin alleged that Wiseman owed the Village at least $750 in fines for a ticket for an inoperable motor vehicle issued in 2007 and that Owens owed at least $200 in fines for a ticket for a red light violation issued in 2011.

¶ 6     The second electoral board was composed of Moore, Rias, and Pate (second electoral board), and was constituted to hear Ervin's objections to the nomination petitions filed on behalf of Alsberry (the incumbent Village president seeking reelection) (case No. 17-EB-3) and Bashir (a candidate for Village president) (case No. 17-EB-7). Ervin objected to Alsberry on the grounds that (1) he failed to file a statement of economic interests, (2) because Wiseman was not qualified for office, Alsberry's candidacy was invalid, and (3) even if Alsberry could potentially stay on the ballot as independent candidate, the nominating petition contained less than the statutory minimum number of signatures required by statute. Ervin objected to Bashir on the grounds that Owens's candidacy was invalid, and that even if Bashir could potentially stay on the ballot as independent candidate, the nominating petition contained less than the statutory minimum number of signatures required by section 10-3 of the Election Code (10 ILCS 5/10-3 (West 2014)).

¶ 7     The third electoral board was composed of Thomas Jaconetty, June Brown, and Jason Guisinger (third electoral board), all of whom were public members appointed by the circuit court, to hear Ervin's objections to the nomination petitions filed on behalf of Rias (case No. 17-EB-4), Moore (case No. 17-EB-5), and Rogers (case No. 17-EB-6). Ervin objected to each candidate for trustee on the grounds that because Wiseman was not a qualified candidate for Village clerk, Rias, Moore, and Rogers were not valid candidates for trustee, and that even if Rias, Moore, and Rogers could potentially stay on the ballot as independent candidates, the nominating petition contained less than the statutory minimum number of signatures required by section 10-3 of the Election Code (10 ILCS 5/10-3 (West 2014)).

¶ 8     The fourth electoral board was composed of Alsberry, Jaconetty, and Brown (fourth electoral board), and was constituted to hear Ervin's objections to the nomination petitions filed on behalf of Jackson (case No. 17-EB-8), Fantroy (case No. 17-EB-9), and Dyer (case No. 17-EB-10). Ervin objected to each candidate for trustee on the grounds that because Owens was not a qualified candidate for Village clerk, Jackson, Fantroy, and Dyer were not valid candidates for trustee, and that even if Jackson, Fantroy, and Dyer could potentially stay on the ballot as independent candidates, the nominating petition contained less than the statutory minimum number of signatures required by section 10-3 of the Election Code (10 ILCS 5/10-3 (West 2014)).

¶ 9     On January 6, 2017, at the initial electoral board hearings, Ervin objected to the composition of the first, third, and fourth electoral boards, claiming that only the second electoral board was "duly constituted." Ervin's objections to the composition of the boards

were noted, and the electoral boards proceeded to conduct 10 separate hearings, one for each of the candidates to whom Ervin objected.

¶ 10     On January 9, 2017, Ervin filed a complaint for injunctive relief in the circuit court, alleging that the circuit court had "appointed three disinterested members of the public to serve as the duly constituted Municipal Officers Electoral Board [(Board)] for the Village of Hazel Crest," but that "in apparent violation of the Illinois Election Code, the Village of Hazel Crest added 4 other individuals as members of the [Board], and by permutation and combination, reconstituted said Board into 4 separate and distinct Boards, with 4 distinct group [*sic*] of members, and 4 distinct individuals serving as Chairman of each of the 4 distinct and separate Boards." Ervin claimed that Alsberry, Rias, Moore, and Pate were the individuals "added" to the "duly constituted" board.

¶ 11     On January 10, the circuit court denied Ervin's complaint for injunctive relief, finding that a municipality may have multiple electoral boards in the event of statutory ineligibility of the statutory members of an electoral board. On February 23, 2017, the circuit court's order was affirmed on appeal. *Ervin v. Municipal Officers Electoral Board*, 2017 IL App (1st) 170066-U.

¶ 12     On January 17, the respective electoral boards issued 10 separate written decisions, overruling each one of Ervin's objections to the individual candidates. With respect to candidates Wiseman and Owens, the electoral board ruled that whether the candidates owed a debt to the municipality did not affect their eligibility to appear on the ballot, since section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2014)) now provides that a candidate "is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality." With respect to the remaining eight candidates, the respective electoral boards entered separate orders finding that Ervin's challenges were without merit, since section 10-2 of the Election Code (10 ILCS 5/10-2 (West 2014)) did not authorize removing otherwise qualified candidates from the ballot where a candidate for another office named in the same slate's nomination petition was found to be ineligible. For each of the 10 candidates, the respective electoral boards issued 10 separate orders that the name of the candidate be printed on the ballot for the April 4, 2017, consolidated election.

¶ 13     On January 19, Ervin filed a single petition in the circuit court seeking judicial review of all ten of the electoral boards' decisions. The petition was entitled "Petition for Judicial Review," and contained a single count. All ten candidates were named as respondents, along with the "Municipal Officers Electoral Board for the Village of Hazel Crest," and each individual member of each of the four electoral boards. Ervin's petition stated that she was the objector before the "Board," that she had been aggrieved by "the decision" of the "Board" "in that the Board's Decision was adverse to her objections." She alleged that "[t]he pertinent legal issues are one and the same as to all the Respondent Candidates," and that the "decision of the Board should be reversed" because the "Boards" were not duly constituted, the "Boards" "failed and refused to interpret the provisions of the Illinois Municipal Code, 65 ILCS 5/3.1-10-5(b), *in pari materia* with the Illinois Election Code, 10 ILCS 5/10-5," and that the "Boards" "misconstrued the provisions of the Illinois Municipal Code, 65 ILCS 5/3.1-10-5(b) in isolation." Her prayer for relief requested an order "reversing the decision of the Board" and for other relief deemed "just and proper."

¶ 14     The respondents moved to dismiss the petition for lack of subject matter jurisdiction, since Ervin filed a single petition for review of ten separate electoral board decisions. On February 3,

the circuit court struck Ervin's petition without prejudice for failing to allege specific counts as to each electoral board decision. Ervin filed an amended petition on February 7, and the respondents filed another motion to dismiss. On February 21, the circuit court vacated its February 3 order allowing Ervin to replead and dismissed Ervin's petition, finding:

> "[Ervin's] original petition contained only one count and sought reversal of ten separate decisions entered by different compositions of the Municipal Officers Board of the Village of Hazel Crest. The decisions were not all based upon the same issues and were not all based upon similar factual allegations.
>
> The petition was conclusory, and did not set out separate and distinct causes of action. Compare *Hagen v. Stone*, 277 Ill. App. 3d 388 (1995)."

Ervin filed her notice of appeal later that day. We granted Ervin's motion for an expedited briefing schedule. Ervin did not file a reply brief in this court.

¶ 15                                     ANALYSIS

¶ 16    On appeal, Ervin advances four arguments. First, she asserts that the trial court had subject matter jurisdiction over her petition for review seeking reversal of all 10 electoral board decisions. Second, she argues that the Village was not authorized to create multiple boards to hear her objections. Third, she argues that a candidate is not eligible to hold municipal office when that candidate is in arrears of a debt owed to the municipality at the time of filing their nomination papers. Finally, she urges us to "take up" the issue of "what happens to the rest of the candidates on a section 10-2 new party slate when one or more of them is disqualified," although she fails to advance any argument or position on this issue.

¶ 17    We review a circuit court's ruling on a motion to dismiss, as well as issues of statutory construction, *de novo*. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 12. Furthermore, to the extent that we reach the underlying decision of the electoral boards, we review an administrative agency's decision on a question of law *de novo*. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 20.

¶ 18    Ervin's first argument is that the trial court had subject matter jurisdiction over her petition for administrative review because she complied with all of the jurisdictional requirements in section 10-10.1 of the Election Code. She argues that a single petition for review of the electoral boards' decisions was appropriate under the circumstances because where multiple claims can be consolidated if filed separately, they may be filed together in a single action. She further argues that "the decisions of the [electoral] boards in eight of the ten cases were in fact the same, and derived from the [electoral] boards' decisions in the first two cases—which are exactly the same factual and legal issues, and the same decision." Ervin does not specify which cases are the "first two cases," although it appears that she is referring to her objections to Wiseman and Owens.

¶ 19    Circuit courts may exercise jurisdiction over election cases only as provided by statute. Ill. Const. 1970, art. VI, § 9; *Bettis*, 2014 IL 117050, ¶ 14. When exercising special statutory jurisdiction, "if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court." *Bettis*, 2014 IL 117050, ¶ 14 (citing *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985)). "There is no question that strict compliance with section 10-10.1(a) is required." *Bettis*, 2014 IL 117050, ¶ 16.

¶ 20    Section 10-10 of the Election Code states:

> "The electoral board shall take up the question as to whether or not the certificate of nomination or nomination papers or petitions are in proper form, and whether or not they were filed within the time and under the conditions required by law, and whether or not they are the genuine certificate of nomination or nomination papers or petitions which they purport to be, and whether or not in the case of the certificate of nomination in question it represents accurately the decision of the caucus or convention issuing it, and in general shall decide whether or not the certificate of nomination or nominating papers or petitions on file are valid or whether the objections thereto should be sustained and *the decision of a majority of the electoral board shall be final subject to judicial review as provided in Section 10-10.1*. The electoral board must state its findings in writing and must state in writing which objections, if any, it has sustained." (Emphasis added.) 10 ILCS 5/10-10 (West 2014).

¶ 21    Section 10-10.1(a) of the Election Code provides:

> "Except as otherwise provided in this Section, a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held. The party seeking judicial review must file a petition with the clerk of the court and must serve a copy of the petition upon the electoral board and other parties to the proceeding by registered or certified mail within 5 days after service of the decision of the electoral board as provided in Section 10-10. The petition shall contain a brief statement of the reasons why the decision of the board should be reversed. The petitioner shall file proof of service with the clerk of the court." 10 ILCS 5/10-10.1(a) (West 2014).

¶ 22    The plain language of the Election Code makes no provision for filing a single petition seeking judicial review of multiple decisions of an electoral board, or in this case, multiple electoral boards. An "objector aggrieved by the decision of an electoral board may secure judicial review of such decision" by filing a petition in the circuit court. Strictly construed, section 10-10.1(a) requires an objector to file a separate petition for judicial review from each electoral board decision that an objector wishes to appeal. The legislature made no provision allowing an aggrieved candidate or objector to join multiple candidates or multiple objections subject to different electoral board orders in a single judicial review action in the circuit court. See *Finko v. City of Chicago Department of Administrative Hearings*, 2016 IL App (1st) 152888, ¶ 18 (finding petitioner's failure to file a separate complaint for each final administrative decision the party wished to appeal deprived the circuit court of subject matter jurisdiction over the unappealed final administrative decision).

¶ 23    Here, Ervin filed a single petition seeking review of 10 separate decisions issued by four separate electoral boards. Ervin's shotgun attempt to obtain judicial review of the 10 separate decisions of the electoral boards is not in strict compliance with section 10-10.1(a) of the Election Code and was properly dismissed by the circuit court.

¶ 24    Ervin argues that under *Hagen*, "for judicial economy and trial convenience, actions which could be consolidated if filed separately, could be filed together in a single action." *Hagen* is factually distinguishable. There, the petitioner filed a five-count complaint seeking judicial review of four separate electoral board decisions, and we held that the five separate counts were separate and distinct causes of action under sections 2-603 and 2-613 of the Code of Civil Procedure (735 ILCS 5/2-603, 2-613 (West 1994)). *Hagen*, 277 Ill. App. 3d at 391-92. Here,

Ervin failed to separate her petition into separate counts, but instead filed a single count challenging all 10 decisions. Ervin failed to strictly comply with section 10-10.1(a) of the Election Code, and thus the trial court correctly dismissed her single-count petition seeking judicial review of 10 separate electoral board decisions.

¶ 25   When a local electoral board convenes for the purpose of ruling on objections to nomination petitions, it often times must operate on a compressed schedule requiring extraordinary effort. That time should not be unnecessarily spent addressing objections that are unwarranted under the Election Code. We will therefore briefly address Ervin's argument that a candidate is ineligible to hold municipal office when that candidate is indebted to the municipality at the time of filing his nomination papers. Her argument is predicated on our supreme court's decision in *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200 (2008). When *Cinkus* was decided, section 10-5 of the Election Code provided that a candidate's nominating papers:

> " 'must include a statement of candidacy ***. Each such statement shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate *is* qualified for the office specified and has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act [5 ILCS 402/1-101 *et seq.* (West 2006)], shall request that the candidate's name be placed upon the official ballot and shall be subscribed and sworn to by such candidate *** and may be in substantially the following form:
>
> * * *
>
> I, . . . . , being first duly sworn, say that I reside at . . . . street, in the city (or village) of . . . . , in the county of . . . . , State of Illinois; and that I am a qualified voter therein; that I am a candidate for election to the office of . . . . to be voted upon at the election to be held on the . . . . day of . . . . , . . . . ; and that I *am* legally qualified to hold such office ***.' (Emphases added.) 10 ILCS 5/10-5 (West 2006)." *Cinkus*, 228 Ill. 2d at 219.

Section 3.1-10-5(b) of the Municipal Code provided that:

> "A person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." 65 ILCS 5/3.1-10-5(b) (West 2006).

¶ 26   The court in *Cinkus* observed that the statement of candidacy and accompanying oath in section 10-5 of the Election Code are phrased in the present tense, which indicated that the candidate swears that he or she is eligible to run for office at the time the nomination petition is filed, as opposed to being eligible to hold office. *Cinkus*, 228 Ill. 2d at 219. Reading section 3.1-10-5(b) of the Municipal Code together with section 10-5 of the Election Code, the court concluded that "the disqualifications provided by section 3.1-10-5(b) of the Illinois Municipal Code render a candidate ineligible to run for office if not remedied by the time the candidate files his or her nomination papers." *Id.* at 219-20.

¶ 27   In 2013, the General Assembly enacted Public Act 98-115, § 15 (eff. July 29, 2013) (amending 65 ILCS 5/3.1-10-5(b)). Section 3.1-10-5(b) now provides that:

> "A person is not eligible to *take the oath of office for a municipal office* if that person is, *at the time required for taking the oath of office*, in arrears in the payment of

a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." (Emphases added.) 65 ILCS 5/3.1-10-5(b) (West 2014).

¶ 28 Section 3.1-10-5(b) no longer conditions a candidate's eligibility for elective office on the candidate being free from indebtedness. Instead, a candidate who owes a debt at the time required for taking the oath of office is not eligible to take the oath of office. While section 10-5 of the Election Code continues to require a candidate to swear that he is qualified to hold office at the time the nomination petition is filed, the legislature removed the disqualifications provided by section 3.1-10-5(b) of the Municipal Code. When read together, section 10-5 of the Election Code and section 3.1-10-5(b) of the Municipal Code do not disqualify a candidate from *seeking* office who owes a debt to the municipality at the time he files his nomination petition. Therefore, the foundation of Ervin's objection that because a candidate owes a debt to the municipality at the time of filing a nomination petition renders that candidate ineligible for placement on the ballot is without merit and is not grounds for disqualification.

¶ 29 Based on the foregoing, we need not address Ervin's argument relating to the eligibility of the other candidates on the nominating petitions for the Hazel Crest United Party and Hazel Crest New Leadership Party when one candidate is disqualified.

¶ 30 Finally, Ervin argues that the Village was not authorized to create multiple electoral boards of different compositions. She has forfeited this argument by failing to develop any legal argument in support of her claim on appeal. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016). Furthermore, her argument is barred by collateral estoppel, since she pursued this identical argument in her appeal from the trial court's denial of her complaint for injunctive relief, the sole focus of which was her challenge to the Village's use of multiple electoral boards. *Ervin*, 2017 IL App (1st) 170066-U. Although she contends that we are not bound by an appellate court order entered pursuant to Supreme Court Rule 23, Ervin fails to appreciate that as a party to the *Ervin* proceedings against the electoral board, which is a respondent in this case, Ervin is bound by the prior appellate decision under the specific terms of Rule 23, which provides that one of the limited circumstances in which a party may invoke a Rule 23 order is to support a contention of collateral estoppel. Ill. S. Ct. R. 23(e) (eff. July 1, 2011).

¶ 31 Collateral estoppel "promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions." *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). "When invoked in subsequent litigation by parties who were not involved in the earlier proceedings, collateral estoppel precludes a plaintiff from relitigating issues by switching adversaries, and it thus provides the plaintiff with an incentive to join all defendants in the first action." *Id.* (citing *In re Owens*, 125 Ill. 2d 390, 398 (1988)). "Collateral estoppel may be applied when the issue decided in the prior adjudication is identical with the one presented in the current action, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Id.* (citing *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 7 (1979)). Here, Ervin seeks to relitigate the same issue she litigated and lost in *Ervin*, 2017 IL App (1st) 170066-U. Therefore, Ervin's argument is barred by collateral estoppel and we need not address it further, especially considering that she failed to advance any coherent legal argument in support of her position.

¶ 32                                    CONCLUSION

¶ 33    The circuit court properly dismissed Ervin's petition for review of the electoral boards' decisions, since Ervin failed to strictly comply with section 10-10.1(a) of the Election Code. Regardless, a candidate who owes a debt to the municipality at the time they file their nomination petition is not ineligible to run for office. Finally, Ervin's challenge to the composition of the electoral boards was forfeited, and was further barred under the principles of collateral estoppel.

¶ 34    The judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.