2025 IL App (1st) 242585-U

No. 1-24-2585

Order filed February 6, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| MICHAEL AIRHART, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | Appeal from the |
| | ) | Circuit Court of |
| MUNICIPAL OFFICERS ELECTORAL BOARD FOR | ) | Cook County. |
| THE VILLAGE OF RIVERDALE, BRADLEY A. | ) | |
| SMITH, KAREN HOLCOMB, AND RODRICK | ) | No. 24COEL000019 |
| JEFFERSON, in their Capacity as Members of the | ) | |
| Municipal Officers Electoral Board for the Village of | ) | Honorable |
| Riverdale, ALBERT V. JONES and LARRY DEAN, | ) | Marcia O'Brien Conway, |
| | ) | Judge Presiding. |
| Defendants. | ) | |
| | ) | |
| (Larry Dean, | ) | |
| | ) | |
| Appellant). | ) | |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court reversing the decision of the Municipal Officers Electoral Board for the Village of Riverdale striking Michael Airhart's name from the ballot for the office of Village President of the Village of Riverdale for the February 25, 2025, consolidated primary election.

¶ 2    Michael Airhart filed nomination papers as a candidate for the office of Village President of the Village of Riverdale, in Cook County, Illinois (Village President) for the consolidated primary election to be held on February 25, 2025. As part of those nomination papers, Mr. Airhart signed a statement of candidacy wherein he averred that he was "legally qualified *** to hold such office." Larry Dean and Albert V. Jones filed a petition with the Municipal Officers Electoral Board for the Village of Riverdale, Illinois (Board) objecting to Mr. Airhart's nomination papers on the basis that he was not legally qualified to hold the office of Village President pursuant to section 3.1-10-5(b) of the Illinois Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2024)) because he had previously been convicted of three felonies and had not received a pardon or restoration of rights from the governor. The Board sustained the objection and removed Mr. Airhart's name from the ballot.

¶ 3    Mr. Airhart filed a petition for judicial review in the circuit court of Cook County, asking the court to reverse the Board's judgment on the basis that it misapplied section 3.1-10-5(b). Mr. Airhart acknowledged that he had felony convictions, but maintained that this would only disqualify him from being eligible to take the office and hold the office of Village President, but it did not disqualify him from seeking the office. He asserted that, under the plain language of section 3.1-10-5(b), if he prevailed in the election, he would be eligible to hold the office if he received a pardon or restoration of rights before he was required to take the oath of office. The court granted the petition, reversed the decision of the Board, and ordered that Mr. Airhart's name be printed on the ballot for the consolidated primary election.

¶ 4 Mr. Dean now appeals, contending that the circuit court erred in reversing the judgment of the Board because Mr. Airhart's nomination papers were invalid where he was not eligible to hold the office of Village President at the time he signed and submitted his statement of candidacy. Mr. Dean maintains that Mr. Airhart's felony convictions made him ineligible to seek or hold public office without first obtaining a pardon or restoration of rights from the governor. Mr. Dean asserts that Mr. Airhart's averment in his statement of candidacy that he was eligible for the office of Village President was false and invalidated his nomination papers. For the reasons that follow, we reverse the decision of the Board, affirm the judgment of the circuit court, and hold that Mr. Airhart's name should be printed on the ballot for the February 25, 2025, consolidated primary election for the office of Village President.

¶ 5                                   I. BACKGROUND

¶ 6 In October 2024, Mr. Airhart submitted his nomination papers for the office of Village President. On Mr. Airhart's notarized statement of candidacy, he averred that he was "legally qualified *** to hold such office." Mr. Dean and Mr. Jones filed their petition objecting to Mr. Airhart's inclusion on the primary ballot on the basis that he was not legally qualified to hold the office of Village President. Specifically, they alleged that Mr. Airhart had been convicted of multiple felonies within Cook County and therefore was not legally qualified to hold the office pursuant to section 3.1-10-5(b) of the Municipal Code (65 ILCS 5/3.1-10-5(b) (West 2024)). Mr. Dean and Mr. Jones asserted that because Mr. Airhart was not legally qualified to hold the office of Village President, the representations made in his statement of candidacy were false and his nomination papers were therefore deficient. Mr. Dean and Mr. Jones attached to their petition certified statements of Mr. Airhart's felony convictions, showing that in 1992, Mr. Airhart had

been convicted of delivery of a controlled substance, and in 1996, was convicted of possession of a controlled substance and possession of a controlled substance with intent to deliver.

¶ 7    The Board held a hearing on the petition where Mr. Airhart's attorney presented his response to the petition. Mr. Airhart's attorney acknowledged that Mr. Airhart had criminal convictions. He represented that Mr. Airhart had "gone through the pardon process with the governor's office" and was awaiting the final step of that process, "which is the pardon." Mr. Airhart's attorney stated that Mr. Airhart would "need[] to have that before he takes office." Mr. Airhart's attorney noted that section 3.1-10-5(b) of the Municipal Code had been amended twice in the past 10 years. When section 3.1-10-5(b) was enacted in 1992, it provided that:

> "A person is not eligible *for an elective municipal office* if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." (Emphasis added.) Pub. Act 87-1119, eff. May 13, 1993 (adding 65 ILCS 5/3.1-5-5 *et seq.* (West 2006)); *Cinkus v. Village of Stickney Municipal Officers Electoral Bd.*, 228 Ill. 2d 200, 216 (2008).

In 2013, the legislature amended section 3.1-10-5(b) through Public Act 98-115 § 15. The amended 2013 version of the statute read:

> "A person is not eligible *to take the oath of office* for a municipal office if that person is, *at the time required for taking the oath of office*, in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." (Emphases added.) Pub. Act 98-115 § 15 (eff. July 29, 2013).

The legislature amended the statute again in 2021, adding language regarding how a person convicted of a felony or any infamous crime could have their right to be eligible for elective office restored:

> "A person is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony, *unless such person is again restored to his or her rights of citizenship that may have been forfeited under Illinois law as a result of a conviction, which includes eligibility to hold elected municipal office, by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law. Any time after a judgment of conviction is rendered, a person convicted of an infamous crime, bribery, perjury, or other felony may petition the Governor for a restoration of rights.*
>
> *The changes made to this subsection by this amendatory Act of the 102nd General Assembly are declarative of existing law and apply to all persons elected at the April 4, 2017 consolidated election and to persons elected or appointed thereafter.*" (Emphases added.) 65 ILCS 5/3.1-10-5(b) (West 2022) (Pub. Act 102-15 § 35 (eff. June 17, 2021)).

¶ 8 Mr. Airhart's attorney asserted that the legislature amended the statue to "allow people to run for office and fix whatever issue it has before the time that they take the oath of office." He maintained that the 2013 amendment was specifically made to "overturn" the supreme court's decision in *Cinkus*. In *Cinkus*, the supreme court held, based on the pre-2013 version of section 3.1-10-5(b), that a candidate who owed a debt to the municipality at the time he filed his nomination papers was not eligible to run for municipal office pursuant to that section. *Cinkus*,

228 Ill. 2d at 222. Mr. Airhart's attorney contended that in *Ervin v. Alsberry*, 2017 IL App (1st) 170389, this court recognized that the legislature removed the requirement from *Cinkus* that a candidate must be qualified to hold the office sought at the time he signs the statement of candidacy.

¶ 9     Mr. Airhart's attorney noted that the 2021 amendment to section 3.1-10-5(b) added language that a candidate with a previous felony conviction could still hold office if they received a pardon or a restoration of rights from the governor. Mr. Airhart's attorney asserted that this amendment was upheld by the supreme court in *Walker v. Agpawa*, 2021 IL 127206. Mr. Airhart's attorney maintained that although Mr. Airhart was not qualified to hold the office of Village President at the time he signed his statement of candidacy, the only relevant inquiry under the statute, as amended, is whether he is qualified to hold the position when he takes the oath of office, should he win the election.

¶ 10     In response, the objectors contended that *Walker* was not relevant because the candidate in that case had received his restoration of rights prior to filing his statement of candidacy. The objectors maintained that the statement of candidacy is phrased in the present tense and represents that the candidate is qualified for the office at the time he or she signs the statement; not that the candidate may become qualified in the future. The objectors asserted that Mr. Airhart's statement of candidacy was false and, therefore, deficient.

¶ 11     In its final order, the Board found that the facts set forth in Mr. Dean and Mr. Jones' petition constituted sufficient grounds to remove Mr. Airhart's name from the ballot. The Board noted that Mr. Airhart was a convicted felon and had not received a pardon or restoration of the right to run for office in Illinois at the time he signed his statement of candidacy or as of the date of the Board's decision. The Board analyzed the post-*Cinkus* amended version of section 3.1-10-5(b) and

determined it had two distinct parts in the "Disqualifications Section." The Board illustrated these distinct sections by dividing the language of the statute as follows:

" 'A person is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality

or

has been convicted in any court located in the United States of any *** felony unless such person is again restored to his or her rights [to hold municipal office by terms of a pardon, restoration by the Governor, or otherwise according to the law].' "

The Board determined that the use of the disjunctive " 'or' " in the "Disqualifications Section" indicated that the different parts of the subsection should be considered separately. The Board therefore read the clause " 'at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality' " separate from the clause " 'has been convicted in any court located in the United States of any *** felony unless such person is again restored to his or her rights [to hold municipal office by terms of a pardon, restoration by the Governor, or otherwise according to the law].' "

¶ 12    The Board found that "at the time required for taking the oath of office" language applied only to the first clause concerning the payment of tax or other indebtedness, but did not apply to the second clause concerning the conviction of a felony and a pardon or restoration of rights. The Board determined that the holding in *Ervin*, cited by Mr. Airhart, therefore did not apply because that case analyzed the indebtedness clause in section 3.1-10-5(b). The Board found that section 3.1-10-5(b) should be read in conjunction with section 10-5 of the Illinois Election Code, which sets forth the requirements for nomination papers, including that each candidate shall file a

statement of candidacy averring that they are qualified to hold the office sought. 10 ILCS 5/10-5 (West 2022). Reading these statutes together, the Board found:

> "The first clause [of section 3.1-10-5(b)] makes an individual ineligible to take the oath of office based on a condition subsequent (*i.e.*, having debts at the time of the oath of office). In this scenario, the individual does not run afoul of Section 10-5 [of the Election Code] because the disqualification was not effective at the time the candidate filed his statement of candidacy. The second clause makes an individual ineligible to take the oath of office based on a condition precedent (*i.e.*, having his or her rights to take the oath of office restored). In this scenario, the individual does run afoul of section 10-5 [of the Election Code] because the disqualification was effective at the time the candidate filed his statement of candidacy."

The Board concluded that because Mr. Airhart had been convicted of a felony and had not received a pardon or restoration of rights from the governor at the time he signed his statement of candidacy, he was therefore not eligible to seek the office of Village President under the second clause of section 3.1-10-5(b) of the Municipal Code and ordered that his name be removed from the ballot for the February 25, 2025, consolidated primary election.

¶ 13 Mr. Airhart filed a petition for judicial review of the Board's decision in the circuit court of Cook County. In his petition, Mr. Airhart asked the court to reverse the final decision of the Board on the grounds that the Board misapplied section 3.1-10-5(b) of the Municipal Code. Relying on *Ervin*, Mr. Airhart contended his prior felony convictions prevented him from holding office, but did not disqualify him from appearing on the ballot. Mr. Airhart maintained that the Board's analysis of section 3.1-10-5(b) as two disjunctive clauses was contrary to the plain

language of the statute and that the "at the time required for taking the oath of office" clause applied to both disqualifications in that section.

¶ 14    In response, Mr. Dean and Mr. Jones, maintained that Mr. Airhart filed a statement of candidacy with his nomination papers averring that he was "legally qualified" to hold the office of Village President despite the fact that he was not legally qualified to hold the office at the time he signed the statement because he had previously been convicted of three felonies and had not received a pardon or restoration of rights. The objectors asserted that the Election Code requires candidates to be eligible to hold office at the time their nomination papers are submitted. They further contended that this false statement alone invalidated Mr. Airhart's nomination papers and made him ineligible to appear on the ballot.

¶ 15    Mr. Dean and Mr. Jones further asserted that section 10-5 of the Election Code is phrased in the present tense, meaning that at the time the candidate signs his statement of candidacy, he or she must be in compliance with that section. The objectors noted that in *Ervin*, this court stated that section 10-5 " 'continues to require a candidate to swear that he is qualified to hold office at the time the nomination petition is filed.' " *Ervin*, 2017 IL App (1st) 170398, ¶ 28. Mr. Dean and Mr. Jones continued that section 3.1-10-5(b) of the Municipal Code must be read in conjunction with section 10-5 of the Election Code as the supreme court explained in *Cinkus*. They acknowledged that the legislature amended section 3.1-10-5(b) following the ruling in *Cinkus*, but pointed out that section 10-5 was not similarly amended. "If the General Assembly had intended to allow someone to run for office while still a convicted felon, the language requiring a sworn statement of eligibility from the Candidate would have been removed." Mr. Dean and Mr. Jones maintained that Mr. Airhart's interpretation of the statutes would lead to an absurd result because an illegible candidate's eligibility for office would not be considered until after the election took

place and the candidate was required to take the oath office. In this situation, the objectors cautioned that citizens could cast votes for a person who never takes office, and a municipality could be left with a vacant office until the next election.

¶ 16    The circuit court's written order indicates that it heard oral argument from the parties, but no transcript of the proceedings is included in the record filed on appeal. The court first discussed the legislative history of section 3.1-10-5(b), the supreme court's rulings in *Cinkus* and *Walker*, and this court's ruling in *Ervin*. The court determined that the post-*Cinkus* 2013 amendment to section 3.1-10-5(b) "changed the status of a person who is not eligible to take municipal elective office to the status of a person who is not eligible to take the oath of office." The court determined that this change made it "abundantly clear that the disqualifications set forth in Section 3.1-10-5(b), only operate, if at all, at the time one takes the oath of office, and not at the time one files their nomination papers and runs for office."

¶ 17    The court found that the Board erred when it determined that the clause "at the time required for taking the oath of office" applied only to the debt to the municipality disqualification of the section 3.1-10-5(b) and not to the convicted of a felony disqualification. The court found that this conclusion was "arbitrar[y]" because the Board did not explain what method of statutory construction it used to reach this conclusion. The court continued that the plain language of the statute indicated that the disqualifications set forth in section 3.1-10-5(b) are not disqualifying unless they exist at the time a person takes the oath of office. The court stated that the "material changes" the legislature made to the statute following the supreme court's ruling in *Cinkus* made this interpretation "abundantly clear." The court therefore reversed the decision of the Board and ordered that Mr. Airhart's name be printed on the ballot for the office of Village President at the February 25, 2025, consolidated primary election.

¶ 18    Mr. Dean filed a timely notice of appeal from the circuit court's order on December 27, 2024. We granted Mr. Dean's motion for an expedited briefing schedule and decision. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 19                                          II. ANALYSIS

¶ 20    On appeal, Mr. Dean contends that the court erred in reversing the decision of the Board where Mr. Airhart falsely swore in his statement of candidacy that he was qualified to hold the office of Village President despite the fact that he had previously been convicted of a felony and had not received a pardon or restoration of rights from the governor. Mr. Dean asserts that despite the amendments to section 3.1-10-5(b) of the Municipal Code, *Cinkus* is still controlling law on the interpretation and application of that section, which requires a candidate to be eligible for the office sought at the time they sign their statement of candidacy and file their nomination papers. Mr. Dean maintains that this court should adopt the interpretation of the Board and hold that the clause "at the time required for taking the oath of office" modifies the indebtedness clause of section 3.1-10-5(b), but does not modify the felony conviction clause.

¶ 21                                  A. Standard of Review

¶ 22    Mr. Airhart filed his petition for judicial review pursuant to section 10-10.1 of the Election Code. 10 ILCS 5/10-10.1 (West 2024). In such circumstances, the proceeding is in the nature of an administrative review. *Jackson-Hicks v. East St. Louis Bd. of Election Commissioners*, 2015 IL 118929, ¶ 19. On appeal, we review the decision of the electoral board, not the circuit court. *Burke v. Electoral Bd. of Village of Bradley*, 2013 IL App (3d) 130141, ¶ 26 (citing *Cinkus*, 228 Ill. 2d at 212). Our standard of review depends on the issues presented. *Jackson-Hicks*, 2015 IL 118929, ¶ 20. In this case, there is no dispute as to the facts, and dispositive question is whether the Board

correctly interpreted section 3.1-5-10(b) of the Municipal Code in determining that Mr. Airhart was not eligible to appear on the ballot for the office of Village President. "Where, as here, historical facts are admitted or established and the only dispute concerns whether the governing legal provisions were interpreted correctly by election officials, the case presents a purely legal question for which our review is *de novo*, a standard we have characterized as 'independent and not deferential.' " *Id.* (quoting *Goodman v. Ward*, 241 Ill. 2d 398, 406 (2011)). In determining how to construe the Municipal Code and the Election Code, we employ the same basic principles of statutory construction that we apply to statutes generally. *Id.* ¶ 21.

> "Our primary objective is to ascertain and give effect to the intent of the legislature. The best indication of legislative intent is the language employed by the General Assembly. When statutory language is plain and unambiguous, the statute must be applied as written without resort to aids of statutory construction [citation] and the court will not read into it exceptions, conditions, or limitations that the legislature did not express [citation]." *Id.*

¶ 23                    B. Section 3.1-10-5(b) Legislation and Precedent

¶ 24    To address Mr. Dean's claims, we must first review the legislative history of section 3.1-10-5(b) of the Municipal Code and the decisions of the supreme court and this court as the statute has been amended over time. As discussed, the legislature has amended the statute several times since its inception, either explicitly in response to decisions of the supreme court or this court or seemingly in response to those decisions.

¶ 25    Article 3.1 was added to the Municipal Code by Public Act 87-1119, which "collected and recodified predecessor provisions." *Cinkus*, 228 Ill. 2d at 216 (citing Pub. Act 87-1119, eff. May 13, 1993 (adding 65 ILCS 5/3.1-5-5 *et seq.* (West 2006)). When *Cinkus* was decided, section 3.1-10-5(b) provided:

" 'A person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony.' " *Id.* (quoting 65 ILCS 5/3.1-10-5(b) (West 2006)).

¶ 26 In *Cinkus*, at the time the candidate filed his nomination papers, he owed a debt of $100 to the municipality. *Cinkus*, 228 Ill. 2d at 204. The objector filed a petition objecting to the candidate's nomination, based on section 3.1-10-5(b) of the Municipal Code. *Id.* The Village of Stickney Municipal Officers Electoral Board (Stickney Electoral Board) held a hearing on the objector's petition where the candidate contended that section 3.1-10-5(b) limited his eligibility to hold the office, but did not limit his candidacy for the office. *Id.* at 206. He maintained that he would be eligible to hold the office provided he paid the debt before assuming office. *Id.* The Stickney Electoral Board sustained the objector's petition and ordered that the candidate's name not be printed on the ballot. *Id.*

¶ 27 The candidate sought judicial review of that decision in the circuit court, arguing, *inter alia*, that he paid the debt prior to the hearing before the Stickney Electoral Board and that, even if he was in arrears on a payment of debt to the municipality, section 3.1-10-5(b) did not provide a basis to strike his nomination papers and exclude his name from the ballot. *Id.* at 206-07. The circuit court reversed the Stickney Electoral Board's decision and ordered the candidate's name to be printed on the ballot. *Id.* at 207. The objector appealed and this court affirmed the decision of the Stickney Electoral Board and reversed the judgment circuit court, finding that the plain language of section 3.1-10-5(b) supported the Stickney Electoral Board's conclusion that being in arrears of a debt to the municipality precludes eligibility for municipal office. *Id.*

¶ 28    Before the supreme court, the candidate contended that section 3.1-10-5(b) applied to his ineligibility to hold elective office, not his ineligibility to run for elected office. *Id.* at 215. He maintained that he was eligible to be a candidate on the ballot provided he paid the arrearage before taking office. *Id.* The objector asserted that section 3.1-10-5(b) made the candidate ineligible to run for office based on the arrearage. *Id.* at 215-16.

¶ 29    The court first examined the plain language of the statute, noting that the parties disagreed on the meaning of the word "eligible" as used in the statute. *Id.* at 216-17. The candidate contended that section 3-1.10.5(b) concerned only the candidate's eligibility to hold office but was silent on a candidate's eligibility to run for office. *Id.* at 217. The objector cited a dictionary definition of "eligible" that defined the word as " 'fit to be chosen.' " *Id.* The objector maintained that because the candidate failed to satisfy the arrearage before filing his nomination papers, he was not fit to be chosen by electors, and therefore ineligible for the office under section 3-1.10.5(b). *Id.*

¶ 30    The court noted that if it construed the word "eligible" in isolation, it would be forced to conclude that the word was ambiguous and could be interpreted to support either party's argument. *Id.* at 218. The court determined that the proper course was to construe section 3.1-10-5 of the Municipal Code *in pari materia* with section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2006)) because those statutes related to the same subject matter and should be interpreted harmoniously. *Id.* Section 10-5 of the Election Code provided that a candidate's nomination papers must include, among other things:

> " 'a statement of candidacy ***. Each such statement shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate *is* qualified for the office specified and has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics

Act, shall request that the candidate's name be placed upon the official ballot and shall be subscribed and sworn to by such candidate * * * and may be in substantially the following form:

***

I, ...., being first duly sworn, say that I reside at .... street, in the city (or village) of ...., in the county of ...., State of Illinois; and that I am a qualified voter therein; that I am a candidate for election to the office of .... to be voted upon at the election to be held on the .... day of ....,....; and that I *am* legally qualified to hold such office ***.' " (Emphases in original.) *Id.* at 219 (quoting 10 ILCS 5/10-5 (West 2006)).

¶ 31    The court found that the plain language of section 10-5 of the Election Code supported the objector's position that section 3.1-10-5(b) refers to the ineligibility to run for office, not the ineligibility to hold office. *Id.* The court observed that the statement of candidacy and accompanying oath are phrased in the present tense so that when a candidate submits their nomination papers, the candidate swears he or she is—not will be—qualified for the office sought. *Id.* "Accordingly, reading these two statutes together, the disqualifications provided by section 3.1-10-5(b) of the Illinois Municipal Code render a candidate ineligible to run for office if not remedied by the time the candidate files his or her nomination papers." *Id.* at 219-20. The court determined that if the legislature intended to speak of future events or contingencies, it would have expressly done so as it did with the requirement of filing a statement of economic interests. *Id.* at 220 (citing 10 ILCS 5/10-5 (West 2006)) (providing that the statement of candidacy "shall state that the candidate *** has filed (*or will file* before the close of the petition filing period) a statement of economic interests." (Emphasis added.)). As such, the court confirmed the Stickney Electoral

- 15 -

Board's decision that the candidate was not eligible to run for municipal office because he was in arrears of a debt owed to the municipality at the time he filed his nomination papers. *Id.* at 222.

¶ 32 Following the supreme court's decision in *Cinkus*, the legislature amended section 3.1-10-5(b) through Public Act 98-115 § 15 (eff. July 29, 2013) (amending 65 ILCS 5/3.1-10-5(b)). The amended version of the statute seemed to be in direct response to the supreme court's decision in *Cinkus* as it pertained to whether the disqualifications in that section should be evaluated at the time the candidate submits their nomination papers or at the time the candidate takes the oath of office and assumes office. The amended version of section 3.1-10-5(b) provided:

> "A person is *not eligible to take the oath of office* for a municipal office if that person is*, at the time required for taking the oath of office*, in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony." (Emphases added.) 65 ILCS 5/3.1-10-5(b) (West 2014).

¶ 33 This court had an opportunity to consider this amended version of section 3.1-10-5(b) and its effect on the holding in *Cinkus* in *Ervin*, 2017 IL App (1st) 170398. In *Ervin*, as relevant here, the objector filed a series of objections to numerous candidates for elected office in the Village of Hazel Crest. *Id.* ¶ 3. Relying on the amended version of section 3.1-10-5(b), the Hazel Crest Electoral Board rejected the objector's contention that two of the candidates were ineligible to appear on the ballot because they owed a debt to the municipality. *Id.* ¶ 12. The circuit court affirmed the electoral board's decision, and the objector appealed to this court. *Id.* ¶ 14.

¶ 34 On appeal, the objector contended, *inter alia*, that, based on *Cinkus*, a candidate is ineligible to hold municipal office when that candidate is indebted to the municipality at the time of filing his or her nomination papers. *Id.* ¶ 25. The *Ervin* court observed that the legislature

amended section 3.1-10-5(b) following the supreme court's decision in *Cinkus*. *Id.* ¶¶ 26-27. The court determined that section 3.1-10-5(b) "no longer conditions a candidate's eligibility for elective office on the candidate being free from indebtedness. Instead, a candidate who owes a debt at the time required for taking the oath of office is not eligible to take the oath of office." *Id.* ¶ 28. The court noted that section 10-5 of the Election Code still required a candidate to swear that he is qualified to hold office at the time the nomination petition is filed, but the legislature "removed the disqualifications provided by section 3.1-10-5(b) of the Municipal Code." *Id.* "When read together, section 10-5 of the Election Code and section 3.1-10-5(b) of the Municipal Code do not disqualify a candidate from *seeking* office who owes a debt to the municipality at the time he files his nomination petition." (Emphasis in original.) *Id.* The *Ervin* court therefore found that, under the amended version of section 3.1-10-5(b), a candidate is not ineligible for municipal office if the candidate owes a debt to the municipality at the time of filing their nominating papers. *Id.*

¶ 35     The legislature did not amend section 3.1-10-5(b) following this court's decision in *Ervin*, but did amend it following this court's decision in *Walker v. Barron*, 2021 IL App (1st) 210080, *rev'd*, 2021 IL 127206.

¶ 36     In *Walker*, the candidate, Roger Agpawa, had previously pled guilty to a federal felony. *Walker*, 2021 IL 127206. ¶ 4. Fifteen years later, he filed papers to run for mayor of the City of Markham. *Id.* ¶ 5. There were no preelection challenges to his nominating papers, but the then-acting Cook County State's Attorney sent a letter to Mr. Agpawa stating that he was ineligible to serve as mayor and, if elected, ineligible to take the oath of office because of his federal felony conviction. *Id.* Mr. Agpawa won the election. *Id.*

¶ 37     Thereafter, the State's Attorney filed a *quo warranto* complaint, alleging that Mr. Agpawa was ineligible to become mayor of Markham pursuant to section 3.1-10-5(b) of the Municipal

Code because he had been convicted of an "infamous crime" and was prohibited from holding municipal office unless he received a pardon under section 29-15 of the Election Code (10 ILCS 5/29-15 (West 2018) ("Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense or otherwise according to law.")) *Id.* The trial court granted judgment on the pleadings in favor of the State's Attorney and this court affirmed that judgment. *Id.* ¶ 7; *People ex rel. Foxx v. Agpawa*, 2018 IL App (1st) 171976.

¶ 38    Subsequently, Mr. Agpawa sought relief from then-Governor Bruce Rauner who issued an untitled document that read:

> "Whereas, ROGER AGPAWA was convicted of the crime of Mail Fraud, Case: 1997 CR 820-2 in the Northern District of Illinois Federal Court and sentenced December 22, 1999 to 36 Months['] Probation and 200 hours['] community service.
>
> Whereas, it has been represented to me that ROGER AGPAWA is a fit and proper subject for Restoration of Rights of Citizenship.
>
> Now, Know Ye, that I, BRUCE RAUNER, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of the State, do by these presents:
>
> RESTORATION OF RIGHTS OF CITIZENSHIP
>
> ROGER AGPAWA
>
> Of the said crime of which convicted, and ROGER AGPAWA is hereby discharged of and from all further hindrance and restored to all rights of citizenship which may have been forfeited under Illinois law as a result of the federal conviction. All rights under federal law which were forfeited as a result of this conviction are unaffected by this action.

Grant Restoration of Rights, Excluding the Right to Ship, Transport, Possess **347 *804

or Receive Firearms Which Were Forfeited by the Conviction." *Walker*, 2021 IL 127206,

¶ 7.

Mr. Agpawa filed this document with the Secretary of State's index department, took the oath of office as Markham mayor, and filed an emergency motion to vacate the trial court's judgment. *Id.* ¶ 8. The trial court granted the motion, finding that Mr. Agpawa's felony conviction was no longer an impediment to holding municipal office " 'by virtue of' " the governor's document. *Id.* The court determined that the governor had "complete authority to grant reprieves from the consequences of criminal convictions to the maximum extent of Illinois law, including Illinois-specific consequences of federal convictions." *Id.* No appeal was taken from that decision. *Id.*

¶ 39     In 2020, Mr. Agpawa filed papers seeking reelection to the office of mayor. *Id.* ¶ 9. Objectors filed petitions objecting to his candidacy, claiming that he was not qualified under section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code because he never received a presidential pardon for his federal conviction. *Id.* The Markham Municipal Officers Electoral Board (Markham Electoral Board) granted Mr. Agpawa's cross-motion for summary judgment, finding that the governor had " 'unlimited power to restore a citizen's civil rights when those rights are lost as a collateral consequence of Illinois law.' " *Id.* ¶ 10. The trial court confirmed the decision of Markham Electoral Board, but the appellate court reversed, finding, *inter alia*, that the governor did not have the authority to pardon the candidate for a federal conviction. *Id.* ¶¶ 11-12; *Walker*, 2021 IL App (1st) 210080, *rev'd*, 2021 IL 127206.

¶ 40     The supreme court noted that the appellate court based its decision on the lack of a restoration of rights provision in section 3.1-10-5(b). *Walker*, 2021 IL 127206, ¶ 20 (citing 2021 IL App (1st) 210080, ¶ 32, *rev'd*, 2021 IL 127206. The appellate court found that the legislature

intended to treat convictions for infamous crimes differently than other felony convictions when it came to restoring the eligibility to seek or hold public office. 2021 IL App (1st) 210080, ¶ 32. "The legislature could enact a statutory provision that restores eligibility to seek and hold public office to a person convicted of an infamous crime generally, or of mail fraud specifically, 'according to law' through a legislative enactment, but it has not." *Id.* "Stated differently, the appellate court majority saw a hole in Illinois election law—an absence of any statutory path to restore eligibility for municipal office after an infamous crime conviction—that robbed Governor Rauner's untitled document of any efficacy, so that [Mr.] Agpawa was still ineligible to be Markham mayor." *Walker*, 2021 IL 127206, ¶ 20.

¶ 41    However, after the appellate court's decision, the legislature amended both section 29-15 of the Election Code and 3.1-10-5(b) of the Municipal Code through Public Act 102-15. *Id.* Following the amendments, section 29-15 of the Election Code now states:

> "Any person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, shall thereafter be prohibited from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, *has received a restoration of rights by the Governor*, or otherwise according to law. *Any time after a judgment of conviction is rendered, a person convicted of an infamous crime may petition the Governor for a restoration of rights.*
>
> *The changes made to this Section by this amendatory Act of the 102nd General Assembly are declarative of existing law.*" (Emphases added.) Pub. Act 102-15 (eff. June 17, 2021) (amending 10 ILCS 5/29-15).

Section 3.1-10-5(b) of the Municipal Code now states:

"A person is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony, *unless such person is again restored to his or her rights of citizenship that may have been forfeited under Illinois law as a result of a conviction, which includes eligibility to hold elected municipal office, by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law. Any time after a judgment of conviction is rendered, a person convicted of an infamous crime, bribery, perjury, or other felony may petition the Governor for a restoration of rights.*

*The changes made to this subsection by this amendatory Act of the 102nd General Assembly are declarative of existing law* and apply to all persons elected at the April 4, 2017 consolidated election and to persons elected or appointed thereafter." (Emphases added.) Pub. Act 102-15 (eff. June 17, 2021) (amending 65 ILCS 5/3.1-10-5(b)).

¶ 42 The supreme court determined that in passing these amendments, the legislature did not "fill the proverbial hole identified by the appellate court []; it clarified that a hole never existed." *Walker*, 2021 IL 127206, ¶ 24. The court recognized that the governor did not have the constitutional authority to pardon a federal conviction, but the governor has statutory authority to mitigate the collateral electoral consequences of such a conviction by issuing a restoration of rights. *Id.* The court determined that Governor Rauner did so when he issued the untitled document which restored all of Mr. Agpawa's rights of citizenship, including the right to hold municipal office. *Id.*

¶ 43    Although none of the authority cited above directly addresses the issue presented in this case—whether a felony conviction prevents a candidate from seeking elected office or whether it disqualifies the candidate from taking the oath of office and holding that office, if elected—the decisions of this court and the supreme court and the legislature's corresponding amendments to the statutory language provide a roadmap for the application of the statute to the circumstances in this case.

¶ 44    In *Cinkus*, the supreme court determined that the candidate's failure to pay the arrearage before filing his nomination papers made him ineligible to seek elected office. *Cinkus*, 228 Ill. 2d at 222. The legislature seemingly took issue with that interpretation of section 3.1-10-5(b) and amended the statute to clearly state that when a candidate owes an arrearage to the municipality, the time to assess the candidate's eligibility for the office is at the time for taking the oath of office. This change to section 3.1-10-5(b) is notable in this case because it permits a candidate who is indebted to the municipality to state in their statement of candidacy filed pursuant to section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2024)) that they are—present tense—eligible for the office sought despite the fact that the candidate will only become—future tense—eligible if they satisfy the arrearage before taking the oath of office.

¶ 45    Following the post-*Cinkus* amendment to the statute, a candidate indebted to the municipality could seek elected office, win the election, but never satisfy their obligation and therefore be ineligible to take the oath of office and hold the office. This is the very same "absurd result" that Mr. Dean warns could occur in this case if Mr. Airhart wins the election but does not receive a pardon before taking office. Of course, we are cognizant of the fact that the payment of a debt is generally within the control of the candidate while the issuance of a pardon or restoration of rights is not. Nonetheless, we believe it is significant that the legislature amended the statute in

manner that could allow this scenario to occur. The legislature chose to determine eligibility under section 3.1-10-5(b) at the time the candidate is required to take the oath office, not at the time the candidate files their statement of candidacy. In essence, the post-*Cinkus* 2013 amendment nullified the holding in *Cinkus* that section 3.1-10-5(b) of the Municipal Code should be read *in pari materia* with section 10-5 of the Election Code for the purposes of determining when a candidate is eligible for office under that statute.

¶ 46    This court recognized this nullification in *Ervin*, holding that section 3.1-10-5(b) "no longer conditions a candidate's eligibility for elective office on the candidate being free from indebtedness." *Ervin*, 2017 IL App (1st) 170398, ¶ 28. Mr. Dean maintains that *Ervin* is not relevant here because that case "dealt solely with indebtedness issues." However, in *Ervin*, this court stated that "[w]hile section 10-5 of the Election Code continues to require a candidate to swear that he is qualified to hold office at the time the nomination petition is filed, the legislature removed the *disqualifications* provided by section 3.1-10-5(b) of the Municipal Code." (Emphasis added.) *Id.* The *Ervin* court recognized that the amendment applied to both disqualifications in that section. The legislature did not remove those disqualifications, it simply changed the timeframe when those disqualifications would affect a candidate's eligibility. While a candidate still must aver in his statement of candidacy that he *is* eligible for the office sought, the legislature has determined that a candidate's nomination papers are not rendered deficient even if the candidate is not presently eligible to take the oath of office under section 3.1-10-5(b) at the time he or she makes that averment.

¶ 47    Finally, there is this court's decision in *Walker*, the legislature's amendments to section 3.1-10-5(b) of the Municipal Code and section 29-15 of the Election Code, and the supreme court's subsequent decision which overruled the appellate court order. The notable takeaway from *Walker*,

for our purposes, is that the focus was on whether Mr. Agpawa could *hold* municipal office before he received a restoration of rights, not whether he was eligible to *seek* municipal office. "We hold that Governor Rauner's untitled document restored all of [Mr.] Agpawa's Illinois rights of citizenship, including the right to *hold* municipal office, and he was eligible to be mayor of Markham." *Walker*, 2021 IL 127206, ¶ 24. In the original litigation, Mr. Agpawa filed his nominating papers, which would have included a statement of candidacy averring that he was eligible for the office sought, before obtaining a restoration of rights from the governor. *Id.* ¶¶ 6-7; *People ex rel. Foxx v. Agpawa*, 2018 IL App (1st) 171976, ¶ 4; 10 ILCS 5/7-10 ("Each petition must include as a part thereof, a statement of candidacy ***.")). After the governor issued the untitled document restoring Mr. Agpawa's right to hold municipal office, Mr. Agpawa filed the document with the Secretary of State's index department. *Walker*, 2021 IL 127206, ¶ 8. That same day, he took the oath of office as Markham mayor and filed the emergency motion to vacate the trial court's judgment that barred him from becoming mayor. *Id.* ¶ 8. The trial court granted the motion, finding that Mr. Agpawa was now eligible to hold municipal office. *Id.* Mr. Agpawa's conviction was therefore an impediment to taking the oath of office and holding the municipal office, not seeking the office. His nomination papers were not rendered ineffective even though he had not yet obtained a pardon or restoration of rights at the time they were filed.

¶ 48    Based on this precedent and the legislature's repeated amendments to section 3.1-10-5(b), it is clear that the clauses "A person is not eligible to take the oath of office for a municipal office" and "at the time required for taking the oath of office" in that section are plainly intended to modify both the indebtedness disqualification and the felony disqualification. The Board here relied primarily on the supreme court's decision in *Cinkus*, but failed to recognize how the language of the statute had evolved over time in response to that decision. The Board's conclusion that the

legislature's use of the word "or" in section 3.1-10-5(b) separates the statute into two disjunctive parts has no basis in the plain language of the statute or in the controlling precedent discussed above.

¶ 49    We recognize that the statement of candidacy Mr. Airhart filed with his nomination papers is phrased in the present tense, declaring that he *is* legally qualified to hold the office of Village President. We also recognize that, because of his felony conviction, Mr. Airhart is not legally qualified to hold that office unless and until he receives a pardon or restoration of rights from the governor. However, as discussed, the legislature has determined that the disqualifiers in section 3.1-10-5(b) do not act as disqualifications at the time a candidate files his nomination papers. This conclusion is clear from the plain language of the statute, as well as the holdings in *Ervin* and *Walker*.

¶ 50    Finally, we acknowledge that the failure of a winning candidate to satisfy a debt to the municipality (which, of the two disqualifying scenarios discussed, may be the easiest to resolve) or receive a pardon prior to taking the oath of office creates uncertainty over the election results and has the potential to leave the office vacant and the municipality without leadership while legal challenges work their way through the courts. The scenario where an elected candidate has not obtained the required restoration of rights or pardon also imposes not insignificant costs on taxpayers if the disqualifying act is not cured by the date the oath of office is due to be taken, as another election would be required to be held to fill the vacancy. See 10 ILCS 5/7-11.1, 7-61 (West 2024). This additional taxpayer cost would be eliminated if the date to cure remained the date of the signature on the nomination papers. That, however, is not a consideration for this body but instead for the legislative branch to address. Accordingly, we affirm the judgment of the circuit court that reversed the decision of the Board, and hold that Mr. Airhart's name should be printed

on the ballot for the office of Village President at the February 25, 2025, consolidated primary election.

¶ 51                                    CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 53    Circuit court judgment affirmed.